[No. 9739.   Department Two.   February 2, 1912.]

## VINNIE TAYLOR, *Respondent*, v. SPOKANE, PORTLAND & SEATTLE RAILWAY COMPANY, *Appellant*.[1]

CARRIERS — INJURY TO PASSENGERS—EVIDENCE—RELEVANCY—DAM-AGES—APPEAL—HARMLESS ERROR. Upon an issue as to the amount of damages sustained by a passenger in a head-on railway collision, in which several passengers were killed, the company admitting negligence causing the accident, it is not prejudicial error to receive in evidence a photograph of the wrecked train showing the force and disastrous nature of the wreck (MORRIS and CHADWICK, JJ., dissenting).

EVIDENCE—DAMAGES—MENTAL SHOCK—ADMISSIBILITY — RES GESTAE. Upon an issue as to the amount of damages sustained in a railway collision by a passenger who was thrown to the floor and suffered traumatic neurasthenia, evidence of shock from the sight of mangled and bleeding passengers while plaintiff was being conveyed to the city in a street car, medical experts testifying that such sight might contribute to plaintiff's injuries, is admissible as a direct or proximate result of the accident and part of the *res gestae*, where it was only a repetition or continuation of what plaintiff had seen or experienced to a greater degree on the wrecked train (MORRIS and CHADWICK, JJ., dissenting).

NEW TRIAL—MISCONDUCT OF COUNSEL—DISCRETION—APPEAL—REVIEW. The refusal of a new trial for misconduct of counsel in argument to the jury is largely in the discretion of the trial court, and it is not an abuse of discretion to deny a new trial, where, in an action for injuries sustained in a railway wreck through the admitted negligence of the railway company, the only issue being the amount of the damages, counsel for plaintiff commented on the gross negligence of the defendant in an improper and inflammatory manner, and upon exceptions taken, the court ruled that the question of negligence had been eliminated and was not within the issues; especially where the trial court reduced the amount of the verdict rendered.

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT. A verdict for $7,000, for personal injuries resulting in traumatic neurasthenia, reduced by the trial judge to $5,000, is not excessive where the condition is serious and probably permanent.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered January 14, 1911, upon

[1]Reported in 120 Pac. 889.

the verdict of a jury rendered in favor of the plaintiff, in an action by a passenger for injuries sustained in a collision. Affirmed.

*Cannon, Ferris, Swan & Lally,* for appellant.
*Robertson & Miller,* for respondent.

Crow, J.—Action by Vinnie Taylor against Spokane, Portland & Seattle Railway Company, a corporation, to recover damages for personal injuries. From a judgment in plaintiff's favor, the defendant has appealed.

On April 9, 1910, two of appellant's trains, traveling in opposite directions, collided in the city of Spokane. The respondent, a passenger, was riding in a day coach, which was not derailed. Other coaches left the track; some passengers were killed and others were injured. Respondent claims that she was thrown against the arm of a car seat, thence to the floor; that temporarily she became semi-unconscious; that while she lay upon the car floor, wounded passengers from another car passed by; that they were mangled, bleeding and crying with pain; that she was assisted to a street car upon which she rode to a hotel; that on the street car was another passenger injured in the wreck who was covered with blood and repeatedly complained that his partner had been killed; that the cries and mangled appearance of the injured and wounded shocked and distressed her; that she sustained an injury to her back, has since suffered intense pain, can only walk slowly, cannot climb stairs, cannot work, has headaches, and at frequent intervals is afflicted with severe illness. The evidence went to the issue whether she had suffered traumatic neurasthenia, and if so, whether her condition was caused by the accident, or resulted from a severe illness and surgical operation which she had sustained a year or two previously, and from which she and the surgeon who performed the operation testified she had fully recovered. The

4—67 Wash.

evidence was conflicting, but the jury, under the instructions of the trial court, found in respondent's favor, and returned a verdict for $7,000 damages. Upon the hearing of a motion for a new trial, this sum was conditionally reduced to $5,000 by the trial judge, for which judgment was entered in respondent's favor.

The appellant did not dispute its negligence; nor did it deny its liability for any injuries which may have resulted to respondent. The jury found the respondent's neurasthenic condition had been caused by the injury and shock resulting from the collision. The controlling issue was the amount of damages to be awarded. Appellant contends that the trial judge erred in admitting evidence of the presence of injured passengers on the street car, and also erred in admitting a photograph of the wrecked trains; that counsel for respondent was guilty of prejudicial misconduct, and that the damages are still excessive. We fail to see the materiality of the photograph or that its admission was prejudicial. The presence and conduct of the injured passenger on the street car was only a repetition or continuation of what the respondent had seen and experienced to even a greater degree before leaving appellant's passenger coach in which she had been injured. The accident occurred in a remote section of the city. The passengers could not reach their destinations on the wrecked train. Some of them, including respondent, rode on the street car. The relation or condition in which she was thus placed was a direct or proximate result of the accident, and very properly might be regarded a part of the *res gestae*. There was evidence of physicians tending to show that the sight of mangled, bleeding and suffering passengers might cause a shock which would contribute to respondent's present condition. She suffered such a shock and experience in a greater degree before leaving the train than after, and we fail to understand how admission of the evidence of which appellant complains was prejudicial.

Counsel for respondent in his closing argument to the jury said:

"Now he says, gentlemen of the jury, that 'the question of negligence in this collision is eliminated from this case, why this talk by counsel on the other side of negligence, gross negligence here, why there is no evidence of gross negligence; we might have done this and we might have done the other thing in this case' and he contends that the question of negligence is eliminated. Now the court says the question is eliminated, not because negligence is taken out of the case, but because of the admission of the defendant; and if there was no other testimony in the case but the admission, there would be no question but that the plaintiff would be entitled to recover; negligence has not been eliminated from this case because this admission of the negligence in the collision is the very reason why the case goes to you practically solely upon the amount that will be allowed. I say that there is evidence of the grossest negligence in this case. Here are these two trains upon the same track, loaded with human freight, here they are rushing into the night with a speed of, the speed that the evidence states, here they are crashing into each other, with the groaning and screaming of human souls going down to their death, I say is evidence of the grossest negligence in this case; and if there is any attempt to eliminate it, it is because they do not desire that an impression should be made upon this jury, before this jury, that this was the grossest character of negligence, and the admission of the fact that it is negligence is in connection with the evidence of the case that it was gross negligence, and that it is for your consideration and in fact there can be no question of it. Can one railroad train jump over another on a track, can one passenger train coming at full speed pass another on the same track, does not the railroad company know that, is there a man so dull who would say that that is not evidence of negligence, and counsel here before he examined this jury said that the negligence of the collision would not be denied by this corporation."

Thereupon the following colloquy occurred:

"Mr. Cannon (attorney for appellant): Just one minute. Mr. Robertson (attorney for respondent): He is not— Mr. Cannon: Counsel— Mr. Robertson: —permitted

now— ˙ Mr. Cannon: If the court please. I want to take an exception to the discussion of the question of whether there was gross negligence, or whether there was negligence in this case; the question of negligence is out of it, and this can be for no other purpose than to prejudice the jury in this case; it is not a subject for discussion, and I take an exception to the remarks of counsel on that question. Mr. Robertson: The question of the accident and the character of the collision— Mr. Cannon: Oh, no; the discussion of whether or not this was gross negligence; this tirade on gross negligence. The Court: I think the question of negligence, Mr. Robertson, has been eliminated, as I instructed the jury. Mr. Robertson: Then this instruction if your honor please is to be construed that it is admitted that the defendant was negligent at the time of the happening of the collision, so that if the plaintiff was injured at that time she is entitled to a verdict. Mr. Cannon: No this is what is admitted: that the defendant does not deny its responsibility for injuries that she may have suffered because of that wreck. And all this talk of gross negligence is prejudicial, and I take an exception to it. Mr. Robertson: I submit, if the court please, that I am entitled to discuss fully the facts in this case in my own way. Mr. Cannon: I wish to save an exception, however. The Court: I think, however, that the question of whether there was gross negligence, or slight negligence, is not within the issues in this case. Mr. Robertson: The words 'gross negligence' if your honor please being used by me simply to show the character of that collision. Mr. Cannon: I except to the counsel's discussion of negligence at all. We assumed responsibility for the result of the accident, and the counsel knows it; why, he would have been trying this case for another week if we hadn't admitted that."

Appellant now contends that, in making this argument, counsel for respondent was guilty of such flagrant misconduct as to require a new trial. We agree with the contention that the argument was improper and inflammatory, and that it should have been omitted, as no issue of negligence or gross negligence was before the jury. Yet, on the record before us, we cannot conclude that a new trial should be granted. We do not know what may have provoked this outburst.

The first portion of counsel's statement indicates that it might have been provoked by some previous argument of counsel for appellant. But as to that we are not informed. The trial judge heard all the arguments, observed their effect upon the jury, and saw everything that occurred. When counsel for appellant interposed his objection, the trial judge, in the presence of the jury, said: "I think the question of negligence, Mr. Robertson, has been eliminated as I instructed the jury." The record shows that he had theretofore so instructed the jury in the clearest and most explicit terms. The trial judge again said: "I think, however, that the question of whether there was gross negligence or slight negligence is not within the issues in this case." Appellant's counsel did not move the court to strike the offensive language, nor did he ask any further instruction to the jury. The jury undoubtedly were men of sufficient intelligence and judgment to appreciate the statements and comments of the trial judge. The granting of a new trial for misconduct of counsel rests largely within the sound discretion of the trial judge. He is in a better position than an appellate court to appreciate and know the effect of any alleged misconduct, and to observe whether it results in prejudice. In the recent case of *Snider v. Washington Water Power Co.*, 66 Wash. 598, 120 Pac. 88, we said:

"We have held by an unbroken line of decisions that a motion for a new trial is necessarily addressed to the sound discretion of the trial court, and when the motion has been granted for insufficiency of evidence the order will not be disturbed unless the evidence is undisputed or the discretion has been clearly and, as said in one case, grossly abused. . . . . The same rule applies with at least equal force where a new trial is granted on account of misconduct of counsel. Indeed, the reasons for the free exercise of a wide discretion are even more potent in such a case than in case of insufficiency of evidence. In the nature of the thing there is no other person or body to whose discretion such a question can be addressed in the first instance, while the question of

sufficiency of evidence is primarily one for the jury.   In reason, therefore, and by analogy to other cases of primary cognizance, the court's discretion should be a real one, and its exercise should not be disturbed except in case of clear abuse."

We there sustained an order granting a new trial for misconduct of counsel.   On the same principle, we should sustain an order denying a new trial, unless the record affirmatively shows the trial judge has abused his discretion.   The only possible effect of the misconduct of which appellant complains would be upon the amount of damages awarded. The trial judge, in the exercise of his discretion, reduced the damages awarded by the jury, and denied the motion for a new trial on condition that respondent consent to such reduction, which she did.   The trial judge saw the respondent, knew her condition, heard the evidence and the arguments of counsel, and in the exercise of his judgment and discretion concluded that the damages for which judgment was finally entered would not be excessive.   He corrected any prejudicial effect that may have resulted to appellant either from misconduct of counsel or from rulings on the admissibility of evidence, even though such rulings be regarded as technically erroneous.   The only purpose of a new trial in this action would be to fix compensatory damages to which the respondent is entitled.   That purpose has already been accomplished, through the medium of the former trial, the verdict of the jury, and the final action of the trial judge.

Appellant contends the damages are still excessive.   There was sufficient evidence to show that respondent was injured, and that as a result of her injuries she is seriously affected with traumatic neurasthenia, which in all probability will permanently continue.   Language used by this court in *Falldin v. Seattle*, 57 Wash. 307, 106 Pac. 914, when passing on a claim of excessive damages, is especially pertinent here. From the entire record, and in view of the fact that the trial

judge sustained the verdict to the extent of $5,000, we conclude no further reduction should be made.

The judgment is affirmed.

DUNBAR, C. J., and ELLIS, J., concur.

MORRIS, J. (dissenting)—I am, for two reasons, unable to concur in this affirmance. Under the admission of the appellant the only questions to be passed upon by the jury, and therefore the only issues upon which evidence was admissible, were the nature and extent of respondent's injuries and the amount to be awarded her as damages. The admission of other evidence was improper, and if it was of such a character as would produce a prejudicial effect upon the jury, such admission should be held error. The two photographs showing the result of the collision, the twisted and broken cars of these two trains in the head-on collision, upon the trestle, could have been offered but for one purpose, and that, to show the gross negligence of the company in permitting such a collision at such a place. Such evidence could have had but one effect upon the jury, convincing them of the gross negligence of an operating system that would permit such a collision. Respondent was not riding in any of the cars shown in these photographs. She had no knowledge of the situation shown. No injurious effect could have come to her because of the scenes therein depicted. It was not claimed such situation in any way contributed to her injuries, or had any mental or physical effect upon her. The only purpose of their admission in the case was to influence the jury against the appellant upon a question not an issue before them. I cannot escape the conclusion it was prejudicial error.

The description of the ride in the street car, the detailing minutely of the bloody appearance of one of the passengers, the gaping wound in his head, his cries over the killing of his friend, the effect upon respondent, and the embodiment of these facts in the hypothetical questions propounded the

medical witnesses, also constituted error. Appellant was in no way responsible for what took place on the street car. It placed neither the injured man nor the respondent upon the car. She was a passenger thereon of her own volition, and any injury to her while such a passenger would not be attributed to the appellant. It was not a part of the *res gestae* any more than if this injured man, driven frantic by his own injuries and the loss of his friend, had in his frenzy committed a physical injury upon respondent. Who can say to what extent the medical men based their opinion of respondent's condition upon the result of the shock she received while on the street car, or how much it may have contributed to the finding of the jury as to the extent of those injuries. Ordinarily I should not like to disturb a verdict solely because of the admission of improper testimony unless the error was so flagrant as to deprive a litigant of a fair and impartial trial upon the issues before the court. Believing this to be such a case, I dissent. The judgment should be reversed and a new trial ordered.

CHADWICK, J., concurs with MORRIS, J.