[No. 11397.   Department Two.   January 20, 1914.]

NILS JOHANSEN, *Respondent*, v. PIONEER MINING COMPANY, *Appellant*.[1]

MASTER AND SERVANT—INJURY TO SERVANT—EMPLOYMENT OF NEGLIGENT FOREMAN—EVIDENCE—SUFFICIENCY. The negligence of a mine owner in employing and retaining a careless and negligent foreman is a question for the jury, where there was evidence that the foreman had, on several occasions, been negligent in his work and had a general reputation for carelessness in and about the mine and where he had previously worked.

SAME—EMPLOYMENT OF NEGLIGENT FOREMAN—EVIDENCE—REPUTATION—ADMISSIBILITY. In an action for injuries caused by the employment of a negligent foreman, it is admissible to show numerous specific independent acts of negligence on the part of the foreman together with a general reputation for carelessness.

SAME — NEGLIGENCE — APPLIANCES—SIGNAL SYSTEM — EVIDENCE—SUFFICIENCY. In an action for personal injuries sustained by a miner, being elevated out of the mine, when the signal service failed to work, the negligence of the master in failing to maintain a safe appliance for signals is for the jury, where it appears that the bell cord was slack and without sufficient supports, so that, when three

[1]Reported in 137 Pac. 1019.

bells were given in the mine, the first pulls were not sufficient to ring the bell, and but one bell was rung, causing the engineer to mistake the signal and so run the elevator as to injure the plaintiff, and that this condition was known to the foreman for some time.

SAME—ASSUMPTION OF RISKS—UNSAFE WAYS—EVIDENCE — SUFFICIENCY. A miner, riding out of the mine on top of the elevator, as directed by the foreman, does not assume the risk from having adopted a perilous way out, when he might have adopted a safe way by climbing a ladder, where it was customary for men to ride out on the elevator, in which case it was stopped at the surface, and it would not have been dangerous if the elevator had been stopped at the surface according to the signal given, and the plaintiff did not know of the danger.

SAME—EMPLOYMENT OF INCOMPETENT SERVANTS — INSTRUCTIONS— COMMENT ON FACTS. Upon an issue as to the employment of an incompetent foreman, an instruction that, where a servant had been in the master's employ for a long time, the master is charged with knowledge of the servant's general reputation as to carelessness or incompetency, is proper and not an unlawful comment on the evidence, where it was conceded that the servant had been in his employ for a long time.

SAME—CONTRIBUTORY NEGLIGENCE—OBEDIENCE TO ORDERS. A miner in riding out of the mine when going to lunch is still under the direction of the foreman, and where he rode on top of the elevator in obedience to orders of the foreman, he is not guilty of contributory negligence, unless the danger was so glaring and apparent that a reasonably prudent man would have refused to obey the order.

DAMAGES—PERSONAL INJURIES — AMOUNT OF RECOVERY — INSTRUCTIONS. An instruction limiting the damages for personal injuries to what will fairly and justly compensate the plaintiff for injuries shown by the evidence, is not erroneous in that it further refers to the items of lost time, and for permanent disfigurement, limiting each to the amount specified in the bill of particulars; nor on the ground that it assumes the fact of permanent disfigurement.

APPEAL—REVIEW—INSTRUCTIONS. It is not error to refuse instructions covered in the general charge.

NEW TRIAL—MISCONDUCT OF COUNSEL—DISCRETION. It is not an abuse of discretion to refuse a new trial on the ground of misconduct of counsel in commenting on the absence of one of the defendant's witnesses, where the case was reopened to allow an explanation of his absence, even though counsel again commented thereon.

APPEAL—REVIEW—NEW TRIAL. The denial of a new trial on the ground of misconduct of counsel will not be disturbed on appeal except for abuse of discretion.

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT.  A verdict for $18,000 for personal injuries sustained by a miner 29 years of age, earning $4 a day and board and lodging, is not excessive where he was severely crushed and injured.

Appeal from a judgment of the superior court for King county, Myers, J., entered January 8, 1913, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an employee in a mine. Affirmed.

*Ballinger, Battle, Hulbert & Shorts,* for appellant.

*Arctander, Halls & Jacobsen,* for respondent.

Mount, J.—This action was brought by the plaintiff to recover damages for personal injuries received by him while in the employ of the defendant.  The cause was tried to the court and a jury.  A verdict was returned in favor of the plaintiff, and a judgment was entered thereon for $18,000. The defendant has appealed.

The facts are substantially as follows:  In the year 1910, the defendant was engaged in mining, in the Nome district, Alaska.  It was operating a mine known as the Portland Bench.  This mine consisted of a shaft which had been sunk to a depth of about 45 feet.  At the bottom of this shaft, certain levels had been run in different directions.  Within the shaft, the defendant had constructed an elevator for the purpose of elevating ore cars from the bottom of the shaft. This elevator extended above the surface something over twenty feet.  The construction above the surface was a framework.  At the top of this framework, was a timber called a cross-beam.  Small cars were provided which were run into the levels and there filled with earth containing gold.  These cars were then pushed into the elevator and lifted to a point about twenty feet above the surface, where they were run out on rails to what was called the dump.

The power for operating the mine was a steam plant, which was located about sixty feet away from the shaft.  The

hoisting machine was within the power house. A cable ran from the hoisting machine to the top of the framework above the shaft, and extended down into the shaft. By this means, the elevator was run up and down the shaft. A system of signals had been arranged by the company for operating this elevator. The signal system consisted of a bell located in the power house. A wire cable extended from the bell to the top of the tower, where it connected with an angle iron which worked on a pivot. Another wire cable extended from a point on this angle iron down the shaft. When it was desired to hoist the elevator loaded with ore, the signal was one bell. When it was desired to hoist when men were upon the elevator, three bells in quick succession, a pause, and then one bell, were the signals given. These signals were given from the bottom of the shaft by pulling upon the signal wire, which extended vertically down the shaft. These signals indicated that, when men were upon the elevator, it was to be stopped at the surface of the shaft instead of being hoisted to the top of the framework. When one bell was given, it indicated that the elevator contained ore and that the elevator was to be raised to the top of the framework.

On the 27th day of March, 1910, the plaintiff had been in the employ of the defendant about nine days. It was his duty to shovel dirt into the cars and assist in pushing them to the elevator.

In addition to the elevator, the defendant had constructed a ladder reaching from the bottom of the shaft to the surface. This ladder was usually used by the men in going into and out of the shaft; but men frequently used the elevator for that purpose.

At noon on March 27, 1910, the men in the bottom of the shaft were going to their dinner. One Cooper, who was the foreman of the men employed in the shaft, was also at the same time going to his noon meal. The men were requested by Cooper to ride in the elevator instead of climbing the ladder. The men had taken their places within the cage of

the elevator, when Cooper directed the plaintiff to climb on top of the cage because there was not room in the cage for all of them. In obedience to this request, the plaintiff climbed on top of the elevator cage and held to the cable which raised the cage up the shaft. Cooper then signaled the power house to hoist the cage. He gave three short jerks upon the signal wire, paused a moment, then gave another short jerk. But one bell rang in the power house. The engineer in the power house, instead of stopping the cage at the surface of the mine, caused it to be hoisted to the top of the framework above the surface. When the cage reached the top of the framework, the plaintiff was caught between the cage and the cross-beam and was crushed and badly injured.

The complaint alleged negligence in five particulars: First, that the foreman was incompetent and habitually negligent and the defendant, knowing these facts while the plaintiff was unacquainted therewith, retained such foreman in its employ; second, that the hoist house or power house, as it has heretofore been referred to, was stationed a long distance from the shaft and therefore made the place dangerous; third, that the signal system which was used at that time was defective and out of repair, and that the defendant knew thereof, while the plaintiff did not know of this defective condition; fourth, that the bell used in the power house was not of sufficient size to convey the signals to the operator of the hoisting engine; fifth, that the defendant was negligent in not employing a helper to assist the operator of the hoist in his work in the power house.

Defendant, for answer to this complaint, denied these allegations of negligence, and alleged affirmatively, first, that the accident and injuries to the plaintiff were caused by his own negligence in failing to choose a known safe way out of the mine instead of the dangerous method which he adopted; second that the injuries to the plaintiff were caused by his own carelessness and the carelessness and negligence of a fellow servant; third, that all the conditions surrounding the

plaintiff were obvious and apparent at the time and the plaintiff knew thereof and assumed the dangers; fourth, that, under the law of Alaska, the plaintiff and the foreman, Cooper, and the operator of the hoist, were fellow servants; that the accident was caused by the negligence of fellow servants for which the defendant is not liable; fifth, that the plaintiff had instituted a prior action in Alaska on the same cause of action, which was dismissed upon its merits with prejudice.

At the close of the plaintiff's evidence, and at the close of all the evidence, the defendant moved the court for a directed verdict. These motions were denied. After the verdict, the defendant moved the court for judgment *non obstante veredicto*, and for a new trial upon all the statutory grounds. These motions were also denied.

It is argued by the appellant that the court erred in denying the motions for a directed verdict and for judgment *non obstante veredicto*, for the reason that there was insufficient evidence to go to the jury upon the question of negligence of the appellant.

It is first argued by the appellant that the evidence shows that the foreman, Cooper, was a careful and competent man. There was evidence offered by the appellant to that effect. There was also evidence to the effect that Mr. Cooper, upon several different occasions, had been negligent in his work, and that his general reputation about the mine and where he had previously worked was that he was careless. It is plain, we think, that this made a question for the jury upon this point.

The appellant argues further that the court erred in receiving in evidence independent circumstances which might tend to show negligence, and also the general reputation of the foreman. We are cited to *Dossett v. St. Paul & Tacoma Lum. Co.*, 40 Wash. 276, 82 Pac. 273; *Hage v. Luedinghaus*, 60 Wash. 680, 111 Pac. 1041; and *Girocamo v. Tribble*, 70 Wash. 25, 126 Pac. 67. These cases, as we read them, were based upon a single act of alleged negligence. The rule is

quite different where numerous acts are proved and where the general reputation of the servant for negligence is generally talked about. In *Green v. Western American Co.*, 30 Wash. 87, 70 Pac. 310, we said:

"We think it was also competent to show the general reputation of the pit boss for competency and regard for the lives and limbs of the miners under his charge  .  .  .

"Specific acts of incompetency of the pit boss were admissible in evidence under the general allegation that the pit boss was ignorant and incompetent  .  .  ."

Wigmore, in his work on Evidence, vol. 1, § 208, says:

"A single act may signify little, but two or three of an extreme quality would signify everything  .  .  .  Proof by reputation is inconclusive, and needs to be reenforced."

In 1 Bailey, Personal Injuries (1st ed.), § 1502, it is said:

"Evidence of general reputation is admissible to prove the unfitness of a fellow-servant, and ignorance of such general reputation on the part of the master may of itself, where it is his imperative duty to know the fitness of his servant, and where inquiry would have led to such knowledge, be such negligence as to charge the master."

We think it was not error to admit evidence of these several specific acts and of the general reputation of this servant. Upon this question, therefore, we think there was sufficient evidence to go to the jury.

The appellant argues at length that there was no evidence of the other allegations of negligence sufficient to go to the jury. The evidence on the part of the respondent showed that the foreman, Cooper, gave the proper signal at the bottom of the shaft to cause the elevator to be raised only to the surface. This signal was three sharp pulls on the wire, a pause, and then one pull. This indicated to the man who was operating the hoisting engine that men were upon the elevator, and that it should be stopped at the surface of the shaft. But one bell was rung in the power house, and the operator heard but one bell. This was accounted for on the

part of the respondent by the fact that the wire which extended from the top of the framework above the surface of the ground to the power house, was very slack. It had no supports under it. And when the jerks were given upon the wire, there was not sufficient force in the wire to ring the bell. It was shown that this condition had existed for some time, and that the foreman himself had complained to the operator of the hoisting engine of this fact. If this was true, as was testified to by witnesses, it made a clear case to go to the jury upon the question of the negligence of the appellant in not maintaining a safe appliance. If this bell wire did not ring the bell according to the signals which were given, it is plain that it was because the wire was slack or the appliance was unfit. The appellant knowing this fact, was liable by reason thereof. It is true this testimony was disputed, but there was clearly sufficient to go to the jury upon that question.

The appellant also argues that the evidence shows that the respondent adopted an unsafe way out of the shaft and selected a perilous and unsafe way voluntarily, and for that reason he cannot recover. It is true there was a ladder upon which the men were accustomed to climb out of the shaft. There was also an elevator by which men frequently were carried out of the shaft. The fact that signals were agreed upon for hoisting men from the shaft is sufficient alone to show that it was customary for men to ride out of the shaft in the elevator. The evidence shows that the respondent had been employed in the mine but a short time. He was directed by the foreman to climb on top of the cage. He was acquainted with the signals. It is apparent, we think, that if the cage had been hoisted to the surface of the shaft, which the signals given called for, that the respondent would not have been injured. The peril, if any existed, was that the elevator, instead of stopping at the surface as it was signaled to do, was raised more than twenty feet above the surface and to the top of the framework, and injury resulted therefrom.

It cannot be said that the way out of the shaft by the ladder was less dangerous than the way out of the shaft by the elevator. One was as safe as the other if they had been properly used. So we think it cannot be successfully maintained that, even though the respondent climbed upon the top of the elevator of his own volition, that this shows that he chose a perilous rather than a safe way.

The rule contended for by the appellant is well settled that where there are two methods by which a service may be performed, one perilous and the other safe, an employee who voluntarily chooses the perilous rather than the safe way assumes the risk of the perilous way. But that rule does not apply to this case, because it was not shown that the plaintiff knew that the elevator was a dangerous way, or that it was in fact perilous. In *Campbell v. Winslow Lumber Co.*, 66 Wash. 507, 119 Pac. 832, we quoted with approval the language of Labatt, Master & Servant, § 439, in part as follows:

"In other words, if a danger is not so absolute or imminent that injury must almost necessarily result from an obedience to an order, and the servant obeys the order and is injured, the master will not afterwards be allowed to defend himself on the ground that the servant ought not to have obeyed the order."

There was, therefore, no error in the trial court refusing to direct a verdict or to enter judgment in favor of the appellant *non obstante veredicto*.

The appellant next argues that the court erred in instructing the jury to the effect that the jury might consider specific acts of negligence on the part of the foreman, and his general reputation as being an incompetent and unfit foreman. Such evidence may be considered upon the question whether the appellant knew, or should have known of the foreman's negligence. What we have said heretofore, disposes of the question here presented.

The court instructed the jury as follows:

"It is the duty of the master to ascertain the character of the servants whom he employs and retains as to being

careless or otherwise. This duty is especially applicable in the case of a foreman. A foreman is one who has immediate charge of a gang of workmen, and whose orders and authority, in and about and concerning their work, the workmen are bound to obey. A master is under the duty towards his servants not to place incompetent or unfit persons in authority over his other servants. And in respect to a servant that has been in the master's employ for a long time, the master is charged with knowledge of such servant's general reputation in the community as to carelessness or incompetency."

It is argued by the appellant that this instruction is erroneous for the reason that it is a comment upon the weight of the evidence because the servant may have been in the employ of the master for a long time. We think there is no merit in this contention, because it was conceded that the foreman had been in the employ of the master for a long time. We think the instruction was proper and was a correct statement of the law. It was certainly not a comment upon a fact.

It is next argued that the court erred in instructing the jury as follows:

"If you find that Cooper was the mine foreman and that as such he was in charge of and had authority over the men in the mine, including plaintiff, and the only one who gave orders to the workmen in the mine and among them to plaintiff, and that the workmen, plaintiff with the others, were bound to obey his orders, that he gave plaintiff and others the order to ascend to the surface at the time in question, by way of the cage instead of by the ladders, and that he thereupon ordered plaintiff to ascend to the roof of the cage and to stand on its roof beam, then in that case, the court charges you that if plaintiff was injured in taking this position in obedience to this order, he is not guilty of contributory negligence in obeying the order, unless the danger was so glaring and apparent that a reasonably prudent person would have refused to obey the order given."

It is argued that this instruction is erroneous because there was no claim that the respondent was ordered to ascend to

the surface by way of the cage instead of by the ladder, and because the respondent was not at that time in the employ of the appellant, and was not required to obey the order if given. From what we have already stated, it is plain that the respondent's contention was that he was ordered to the roof of the cage by the foreman; at least, the respondent's testimony shows that he was directed by the foreman to ascend to the top of the cage, and that, in obedience to that request, he did so. It is plain, we think, that the respondent at that time was still under the direction of the foreman.

"One who is hired by the day, week or year, is just as much in his employer's service in going to and from his work as when actually engaged in the work itself." *Abend v. Terre Haute etc. R. Co.*, 111 Ill. 202, 53 Am. Rep. 616.

See, also, *Sayward v. Carlson*, 1 Wash. 29, 23 Pac. 830.

The court instructed the jury that, if they found for the respondent, they should allow "what will fairly and justly compensate him for the injuries shown by the evidence, and for this purpose may consider" the time lost after receiving the injuries in which he had been prevented from earning wages by reason of the injuries sustained by him, not to exceed the sum of $3,250, the amount given in the bill of particulars. And then followed a similar instruction with reference to other items named in the bill of particulars. Subdivision 5 of that instruction was as follows:

"For any and all permanent disfigurements, maimed and crippled condition of the plaintiff during the rest of his natural life, not to exceed, however, the sum of $10,000."

The appellant contends that this instruction was erroneous because it specifically calls the attention of the jury to the bill of particulars; and particularly as regards the fifth subdivision above quoted relating to permanent disfigurement, for the reason that the same assumes that the respondent is permanently disfigured, maimed and crippled. But the jury were particularly told that they could find what would com-

pensate the respondent only for the injuries shown by the evidence. We think there was no error in this instruction.

In addition to these instructions, the appellant bases error upon other instructions which the court gave; and also upon a long list of instructions which were requested by the appellant and which were refused by the court. It is not necessary for us to set out these instructions at length, nor to state the grounds of the objections, because the instructions given by the court were clear and explicit and covered every phase of the case correctly. The instructions requested were either given in substance, or were not applicable to the case. Instructions to the jury should be short and concise. If the instructions requested by the appellant had been given, even if they correctly state the law, which we think some of them do not, the jury, we think, would not have been enlightened but probably would have been misled, on account of the length and involved condition of some of these requested instructions. It is sufficient to say that the instructions given correctly state the law of the case, and were sufficient to cover every point necessary to be considered by the jury.

It is also argued by the appellant that misconduct of counsel for the respondent during the argument of the case to the jury constituted reversible error. During the trial of the case, one of the appellant's witnesses by the name of Planting was not present, and had not been called by the appellant. Counsel for the respondent remarked to the jury upon this fact. Objection was made by the appellant, and the case was reopened to allow the appellant to show why the witness, Planting, had not been called. A showing was made to the effect that Planting had promised to be in attendance upon the trial, but was not there. After this fact had been shown, the respondent's counsel said: "I still insist on saying to you, ladies and gentlemen of the jury, where is Mr. Planting?" Other statements of the same character were made. Whether a new trial should be granted upon this ground alone is largely within the discretion of the trial court. The

exercise of that discretion will not be disturbed except in cases of clear abuse. *Snider v. Washington Water Power Co.*, 66 Wash. 598, 120 Pac. 88; *Taylor v. Spokane, Portland & Seattle R. Co.*, 67 Wash. 96, 120 Pac. 889. We think there was no such abuse of discretion in this case as would warrant a reversal.

It is next argued that the verdict is excessive. The record shows that the respondent was a young man, 29 years old at the time of the accident; that he was a miner by occupation, capable of earning $4 per day, and his board and lodging. He was severely crushed and injured. This case is very similar to *Gennaux v. Northwestern Imp. Co.*, 72 Wash. 268, 130 Pac. 495. The injuries to the respondent here are as great as the injuries to the respondent in that case. We there refused to find that the verdict was excessive, and we are of the opinion that the verdict in this case is not so excessive as to warrant a reduction.

Finding no error in the record, the judgment is affirmed.

CROW, C. J., PARKER, MORRIS, and FULLERTON, JJ., concur.