[No. 12663.  Department Two.  November 17, 1915.]

JAMES HART *et al.*, *Respondents*, v. W. H. BOGLE *et al.*,
*Trustees etc. of the Jeffs Orphans' Home,*
*Appellants.*[1]

JUDGMENTS—BAR—RES JUDICATA—MATTERS CONCLUDED.  The dismissal of an action to recover attorney's fees, under an express contract to pay one-half of the value of lands recovered, for the reason that the defendant was incompetent to make the contract, is not a bar to a subsequent action to recover on *quantum meruit* against trustees under a will, who, upon an independent consideration, had agreed to pay whatever fees might be allowed for the plaintiffs' services as attorneys; the reasonable value of the services performed not having been in issue in the former action.

ATTORNEY AND CLIENT — COMPENSATION — CONTRACTS — CONSTRUCTION.  A compromise of a pending case in which the plaintiffs' attorneys had a contract for an attorney's fee equal to one-half of the value of property which they might recover, whereby the suit was dismissed and trustees under a will agreed to pay "whatever attorney's fees are allowed or established in their favor," is an original undertaking on the part of the trustees to pay the attorney's fees allowed them, when determined in an action brought for that purpose.

SAME.  Such an agreement is not an assumption of the client's contract to pay a fee equal to one-half of the value of the property recovered; but an obligation to pay the reasonable value of the services performed.

APPEAL—DECISION—CONCLUSIVENESS—DICTUM.  A decision on appeal, affirming the dismissal of an action by attorneys to recover a fee on an express contract, which expressly finds that defendants obligated themselves to pay the reasonable value of the services, is not mere dictum, but is conclusive on the right of plaintiffs to maintain another action upon *quantum meruit*.

FRAUDS, STATUTE OF—INDEPENDENT PROMISE—PARTIES.  Where, for a valuable consideration, one promises to another to pay his debt to a third person, the latter may maintain an action thereon in his own name.

COMPROMISE AND SETTLEMENT—CONSIDERATION—PERFORMANCE OR BREACH.  Where, by a compromise of a pending suit, it was agreed that the suit should be dismissed and certain property conveyed to trustees under a will, the consideration for the trustees' agreement

[1]Reported in 152 Pac. 1010.

therein to pay the attorney's fees in such suit does not fail by reason of the fact that the identical deed mentioned was not delivered to the trustees, where, by another deed, the compromise was fully carried out by vesting the trustees with full title to the property; nor by the fact that the suit was not dismissed, where the continuance of the same for the purpose of determining the question of attorney's fees and the validity of the compromise was not due to any act of the attorneys for the plaintiff.

EXECUTORS AND ADMINISTRATORS — CONTRACTS — ACTIONS — CLAIM AGAINST ESTATE. Failure to file a claim against an estate is no defense to an action against trustees under a will for the reasonable value of attorney's services, rendered to a third person, when the trustees, upon an independent consideration, had agreed to pay the attorneys the reasonable value of their services.

SAME—CONTRACTS—LIABILITY OF TRUSTEES—ESTATE BOUND. Trustees under a will, who acquired property through a compromise of a pending suit in consideration of their agreement to pay certain attorney's fees, cannot escape liability on their promise, to the extent of the property acquired by them, by asserting want of their authority to bind the property and estate theretofore held by them under the will.

APPEAL—PRESERVATION OF GROUNDS—OBJECTIONS. Where a specific objection is made to a hypothetical question, error cannot be predicated on appeal upon various other objections thereto not stated below.

APPEAL — PRESERVATION OF GROUNDS — FAILURE TO REQUEST — INSTRUCTION. Error cannot be predicated upon misconduct of a party during the cross-examination of a co-party, where no request was made to instruct the jury to disregard the objectionable remarks and evidence, nor claim made that the conduct was so flagrant that it could not be cured by an instruction.

APPEAL—REVIEW—DISCRETION—NEW TRIAL. The discretion of the trial court in refusing a new trial for misconduct in the examination of a witness will not be reviewed except for abuse.

WITNESSES—COMPETENCY—TRANSACTIONS WITH DECEASED—ACTION ON TRUSTEES' INDEPENDENT CONTRACT. In an action against trustees under a will to recover upon their independent contract to pay the reasonable value of services rendered by attorneys to a third person, since deceased, there is no room for the application of Rem. & Bal. Code, § 1211, prohibiting evidence by a party in interest of transactions with the deceased, where the adverse party sues or defends as executor or administrator; hence evidence of transactions with the deceased client, leading up to plaintiff's employment, is not inadmissible.

ATTORNEY AND CLIENT—COMPENSATION—SERVICES—EVIDENCE—AD-
MISSIBILITY. In an action for the reasonable value of attorney's fees
in a certain suit, the evidence of their services and expenses in an
ancillary suit which was necessary to secure title to the property
in suit, is admissible.

Appeal from a judgment of the superior court for King
county, Mackintosh, J., entered November 18, 1914, upon
the verdict of a jury rendered in favor of the plaintiffs, in
an action on contract. Affirmed.

*Bogle, Graves, Merritt & Bogle,* for appellants.
*Kerr & McCord,* for respondents.

ELLIS, J.—This is an action for the collection of an at-
torney's fee. The sequence of events leading up to this ac-
tion may be found in three decisions of this court. *State ex
rel. Bogle v. Superior Court,* 63 Wash. 96, 114 Pac. 905;
*In re Jeffs' Estate,* 73 Wash. 212, 131 Pac. 847, and *At-
wood v. Sicade,* 73 Wash. 219, 131 Pac. 850. Reference is
made to those decisions for the facts. In addition to this,
we find it necessary to add only the following: After the
granting of the writ prohibiting the superior court of King
county from fixing the attorney's fees of Hart and Allen,
plaintiffs here, in the first of the above cases, Mary Jeffs was
declared an incompetent and guardians for her were ap-
pointed by the superior court. These guardians, on their
own motion, were substituted as parties plaintiff in the suit
of *Jeffs v. Sicade,* known on our records as the *Atwood* case.
The trustees under the will of Richard Jeffs were made par-
ties defendant, and also Hart and Allen, plaintiffs herein.
Hart and Allen, by cross-complaint, set up their contract
for attorney's fees with Mary Jeffs and also the settlement
of February 14, 1911, resulting in the agreement between
Henry Sicade and wife, parties of the first part, Mary Jeffs
as party of the second part, and the trustees of the Jeffs
Orphans' Home, created by the will of Richard Jeffs, as

parties of the third part, referred to in all of the cases and in the record here as the three party agreement. By that agreement, Sicade and wife were to convey to the trustees three-fourths of the property which Mary Jeffs had conveyed to them. Touching the attorney's fees of Hart and Allen, the three party agreement contained the following clause:

"The suit now pending in behalf of the party of the second part against the parties of the first part in the superior court of King county, state of Washington, shall be dismissed without costs to either party. The attorneys for the plaintiff having an agreement with the party of the second part for an attorney's fee equal to one-half of the value of the property which they might recover in this action, it is agreed that, whatever attorney's fees are allowed or established in their favor for the party of the second part in such suit, shall be paid by the said parties of the third part as such trustees."

Upon the covenants of this agreement, Hart and Allen, the plaintiffs here, in their cross-complaint prayed judgment for attorney's fees equal to one-half in value of the property by the three party agreement to be conveyed by the Sicades to the trustees. This cross-complaint was put in issue by answers of the trustees and the new plaintiffs in that action. Thereafter Mary Jeffs died and her executors, Atwood and Bogle, were substituted as plaintiffs. The case then proceeded to trial, resulting in a judgment against Hart and Allen, which on appeal to this court was affirmed. *Atwood v. Sicade*, 73 Wash. 219, 131 Pac. 850. Thereafter Hart and Allen brought this suit against the trustees, seeking to recover on a *quantum meruit* for services rendered in bringing the original action of Mary Jeffs v. Sicade, preparing for trial, and finally effecting the settlement of February 14, 1911, resulting in the three party agreement and in the conveyance in pursuance thereof by Sicade and wife to the trustees of three-fourths of the property which Mary Jeffs had conveyed to them. The action is, in sub-

stance, an action against the trustees on the three party
agreement as an agreement, so far as the plaintiffs here are
concerned, made for their benefit, claiming as the measure of
recovery the *quantum meruit* for services performed in the
original suit of Jeffs v. Sicade. The case was tried to a
jury, and a verdict was rendered in favor of the plaintiffs
for $15,000. From a judgment thereon, the defendants, the
trustees, have appealed. The assigned errors are treated in
the briefs under several heads, which we shall discuss in what
seems to us their logical order.

I. The main contention of the appellants is that the de-
cision of this court in the *Atwood* case (73 Wash. 219) is a
bar to this action, in that that decision is *res judicata* of the
plaintiffs' right to recover any attorney's fees, and that in
electing to sue on their contract with Mary Jeffs rather
than for a *quantum meruit*, the plaintiffs here in that action
estopped themselves to maintain this action. The real con-
troversy in the *Atwood* case, so far as concerns the attorneys'
fees, was whether respondents here should be allowed to re-
cover on the basis of their contract with Mary Jeffs. In
their cross-complaint in that action, they set up and asked
relief on that contract. No evidence was taken as to the
value of the services and the question of *quantum meruit*
was not tried. Hart and Allen in that case apparently pro-
ceeded upon the theory that they had the right to contest
the question of the validity of their contract with Mary Jeffs
and their right to recover thereunder to the court of last re-
sort. They now contend that, having done so, they are not
estopped to maintain an action on the three party agree-
ment, as an agreement made for their benefit, to recover the
reasonable value of their services. They contend that this
right was reserved to them by the decisions of this court,
both in the prohibition suit (63 Wash. 96) and in the *Atwood*
case (73 Wash. 219). In the first mentioned decision, touch-
ing the three party agreement, we said:

5—88 WASH.

"The language relied upon by the plaintiff's attorneys and the respondent in support of jurisdiction is that, 'it is agreed that, whatever attorney's fees are allowed or established in their favor for the party of the second part (Mary Jeffs) in such suit, shall be paid by the said parties of the third part as such trustees.' This language does not mean that the attorney's fees are to be established in the Jeffs suit. Clearly, however, it does mean that the trustees will pay the attorney's fees allowed them for their services to their client Mary Jeffs in her suit against the Sicades, when determined in an action brought for that purpose."

We shall presently advert to our decision in the *Atwood* case. On the question of *res judicata* and estoppel, the appellants mainly rely on the case of *Krug v. Hendricks*, 54 Wash. 209, 102 Pac. 1049. That case is not apposite. There it was held that both actions were brought upon express contracts, the first upon an express contract to pay a five per cent commission on a real estate sale, the second on an express promise to pay the reasonable value of the service. The actions were both against the same parties defendant. Both the actions here were also based upon express promises, but there is this vital difference between the cases here and those involved in the *Krug* case: Here the action, by cross-complaint in the *Atwood* case, was primarily against Mary Jeffs on the original contract with her. The second action, the one now before us, was against the trustees on the three party agreement, and the Mary Jeffs contract was merely set up by way of inducement. In the first action, the *Atwood* case, the Mary Jeffs contract was held invalid. In that case the contract with the trustees, the three party agreement, was set up as showing an assumption by the trustees of whatever might be recovered on the contract with Mary Jeffs. There might be some force in the claim that the disposal of the Mary Jeffs contract as invalid was a final disposition of the three party agreement were it not for the fact that in the *Atwood* case this court expressly and unequivocally in

its opinion stated the contrary.  Speaking of the Mary Jeffs contract, this court said:

"We have already said all we care to say about this contract in the previous case; we do not regard it as the contract of one competent to contract.  These attorneys did, however, perform valuable services in the commencement of the action against Sicade and in preparing it for trial.  It does not seem to us problematical what the outcome of that suit would have been had it proceeded to trial.  No court, under the circumstances, would have sustained the Sicade deed.  The services of Mr. Allen were also valuable in obtaining the settlement from Sicade upon the basis of a reconveyance of three-fourths of the property instead of one-half as first proposed.  That settlement is not before us for review as to the amount of property obtained from Sicade, and hence it is not proper for us to here speak our mind concerning it."

Speaking of the three party agreement, we said:

"The trustees, however, there obligated themselves to pay these attorneys such a sum as should be allowed them in some proceedings brought to determine that allowance, and this obligation must be kept.  That sum should be a reasonable sum, and fully commensurate with the value of the services performed.  What that sum shall be is not for us in the first instance to determine.  We do not, however, believe it is the sum of $43,125, as here demanded."

This is a direct recognition of the right of the respondents as attorneys to sue upon the three party agreement as a primary undertaking on the part of the trustees to pay the reasonable value of the services rendered to Mary Jeffs, regardless of the fact that the contract with her was invalid because of her incompetency to contract.  The claim was made by the trustees in their brief on the appeal in the *Atwood* case that the judgment in that case was a bar to any recovery on the *quantum meruit*.  In view of that fact it will not do to say that what was said of the three party agreement was mere *dictum*.  That agreement was then directly before us under a claim that by it the trustees assumed the

Mary Jeffs contract. What they had assumed, if anything, was, so far as they were concerned, the whole question. In deciding that question, we held that they did not assume the contract as a binding obligation upon them, but did assume an obligation to pay the reasonable value of the service whenever determined in some proceeding brought for that purpose. When the judgment of a court is expressly limited and expressly reserves some phase of the controversy for future litigation, that reservation can hardly be called mere *dictum.* The above quoted language was obviously used advisedly to limit the decision to the question actually litigated. Moreover, as a matter of fact, the reasonable value of the service was not tried out in the *Atwood* case. Manifestly, it would require different evidence to establish the reasonable value of the services from that which was required and was offered to prove the specific contract with Mary Jeffs and to establish a recovery on it as an express contract. We have held, by decisions both early and late, that a judgment in a suit on an express contract is not a bar to a second suit on a *quantum meruit* where it takes different evidence to establish the two causes of action. *Buddress v. Schafer,* 12 Wash. 310, 41 Pac. 43; *Thayer v. Harbican,* 70 Wash. 278, 126 Pac. 625; *Mallory v. Olympia,* 83 Wash. 499, 145 Pac. 627.

This court is also committed to the doctrine that, where one person for a valuable consideration makes a promise to another to pay the debt of that other to a third person, such third person may maintain an action in his own name upon the promise and against the promisor alone. *Johnson v. Shuey,* 40 Wash. 22, 82 Pac. 123; *Nordby v. Winsor,* 24 Wash. 535, 64 Pac. 726; *Dimmick v. Collins,* 24 Wash. 78, 63 Pac. 1101; *Gilmore v. Skookum Box Factory,* 20 Wash. 703, 56 Pac. 934; *Ordway v. Downey,* 18 Wash. 412, 51 Pac. 1047, 52 Pac. 228, 63 Am. St. 892; *Don Yook v. Washington Mill Co.,* 16 Wash. 459, 47 Pac. 964; *Solicitors Loan & Trust Co. v. Robins,* 14 Wash. 507, 45 Pac. 39; *Kelley v. Greenough,* 9 Wash. 659, 38 Pac. 158.

These considerations, we think, dispose of the appellants' main contention. The cross-complaint in the *Atwood* case being an action on the contract, the judgment thereon is not a bar to this action for the *quantum meruit*. The first action, being an action primarily against Mary Jeffs and her estate, is not a bar nor a waiver of the right to maintain the action against the trustees upon their own promise, the measure of recovery being the *quantum meruit*, and not the amount stipulated in the Mary Jeffs contract.

II. The appellants contend that, even assuming that the respondents might in a proper case maintain an action on the three party agreement as a promise made for the benefit of a third person, nevertheless this action cannot be maintained because the trustees received nothing by reason of the three party agreement and that the consideration for their promise touching the attorney's fees has failed. It is true that the identical deed then made by the Sicades to the trustees in settlement of the suit to set aside the deed of Mary Jeffs to Sicade was never recorded nor itself made the basis of the trustees' title. But it is also true that Sicade and wife did make another deed conveying even more property than was contained in that deed. The fact that they more than met the original agreement is a matter of which the trustees can hardly complain. By this second deed they conveyed the property to the executors of Mary Jeffs' estate instead of the trustees. This deed effectually disposed of the Sicade suit, so far as the Sicades' claim to the property conveyed was concerned. This property was listed as a part of her estate, and by her will passed to the trustees. The dominant fact remains that the three party agreement was fully carried out by the Sicades, thus divesting them of the title to the property in a manner that made it certain it would go to the trustees. It is true that the suit of Mary Jeffs v. Sicade was not dismissed but thereafter persisted as the *Atwood* case. The fact that further litigation was had touching the attorney's fees was a thing which was con-

templated by the three party agreement itself. This was recognized in our decision in the prohibition proceedings (*State ex rel. Bogle v. Superior Court, supra*), in the language hereinbefore quoted. That opinion was handed down in April, 1911, less than a month after the execution of the three party agreement. The continuance of the *Atwood* case thereafter was a matter for which the respondents here were not responsible. In May, 1911, the guardians of Mary Jeffs were, on their own motion, substituted as parties plaintiff and prosecuted the action through their own attorneys, attacking both the attorney's fee agreement and the three party agreement. To permit the fact that the action was not dismissed to defeat any recovery under the three party agreement for the reasonable value of the services which had been performed by the respondents here, would be, under these circumstances, a manifest injustice.

It is further claimed that, by the three party agreement, the amount which would go to the trustees was not increased, but only the amount of the respondents' attorney's fees. This is based upon the circumstance that, prior to that agreement, the Sicades had agreed to convey to the trustees one-half of the property which they had received from Mary Jeffs, with the understanding that they were to pay one-half of respondents' attorney's fees and the trustees the other half, and that by the three party agreement, through the respondents' efforts, Mary Jeffs consented that the Sicades should convey three-fourths of the property, the trustees to assume all of the respondents' fees. It is argued that this, under their contract with Mary Jeffs for one-half of any recovery from the Sicades as an attorney's fee, merely increased their fee and, though it also increased the amount of property to be received by the trustees, it increased the fee which the trustees assumed to pay in the same amount. This argument loses all force when it is remembered that the trustees have throughout contended that they did not assume the attorney's fee contract as made with Mrs. Jeffs, but only assumed, if

anything, the payment of the reasonable value of the services when the same should be determined by a court of competent jurisdiction. So construing the three party agreement, it is manifest that the trustees, by that agreement, did receive a large amount of property that they would not have received under their original tentative agreement with the Sicades.

III. The further contention, that this action cannot be maintained against the trustees because no claim was ever filed against the estate of Mary Jeffs, is answered by what we have said touching the question of *res judicata*. This suit was brought against the trustees on the undertaking by the trustees in the three party agreement to pay the reasonable value of respondents' services. This was, in effect, construed by us in the *Atwood* case as not dependent on the enforcement of the attorney's fee contract against Mary Jeffs, but as an independent obligation on the part of the trustees to pay such sum as should be allowed as reasonable and commensurate with the services performed. We there held that the Mary Jeffs contract could not be enforced because made by one not competent to contract, but in the same connection we held that the trustees, by the three party agreement, obligated themselves to pay the reasonable value of the services actually performed.

IV. It is asserted that this suit cannot be maintained because the trustees, as trustees under the will of Richard Jeffs, had no power to bind his estate by the three party agreement. This is beside the question. The judgment for the attorney's fees, it may be assumed, cannot be enforced against the Richard Jeffs property. It can, however, be enforced against the trustees to the extent that they hold property coming from the Mary Jeffs estate, through reconveyance from the Sicades. Until it appears that they hold no such property, the question now advanced cannot arise.

V. A long hypothetical question was propounded to an attorney who was called by the respondents to testify con-

cerning the value of their services. The following colloquy took place:

"Mr. Graves: I object to that because it is not a question founded upon the evidence in this case. The Court: The objection will be sustained. Mr. McCord: In what particulars your Honor? The Court: There is a statement there that it was one of extreme doubt. Q. Well, eliminating from the question that I have stated to you, the question as to whether or not the result of the litigation and the result of the suit that was brought by Allen and Hart was doubtful; assuming that it was not doubtful? Mr. Graves: I object to it on the further ground that it does not appear that they by their efforts acquired any property which was returned to Mary Jeffs or her estate. The Court: The objection will be overruled. You may answer the question."

The appellants now raise many objections to the hypothetical question, but we are of the opinion that the foregoing colloquy limits the objection actually made to the single ground that it does not appear that, by the respondents' efforts, any property was restored to Mary Jeffs or her estate. The objection, as we have seen, in the light of the whole record, was not well taken. If counsel had intended to raise the various objections which they now seek to assert, it would have been only fair to both court and counsel to have pointed them out at the time.

VI.    Complaint is made of certain misconduct of one of the respondents occurring during the cross-examination of the other respondent as a witness on their behalf. We find it unnecessary to state in detail the circumstances. The appellants made no request that the court instruct the jury to disregard the objectionable remarks and the objectionable evidence which was offered in connection therewith and ruled out. No motion was made to discharge the jury from further consideration of the case, nor was any claim then made that the misconduct was so flagrant as not to be cured by such an instruction. Under these circumstances, we think the appellants are in no position now to insist upon that

misconduct as a ground of reversal. The cases of *Snider v. Washington Water Power Co.*, 66 Wash. 598, 120 Pac. 88. and *Rogers v. Kangley Timber Co.*, 74 Wash. 48, 132 Pac. 731, present situations so different from that here presented that we do not consider them controlling here. The trial court here overruled the motion for a new trial. As we said in the case of *Johansen v. Pioneer Min. Co.*, 77 Wash. 421, 432, 137 Pac. 1019:

"Whether a new trial should be granted upon this ground alone is largely within the discretion of the trial court. The exercise of that discretion will not be disturbed except in cases of clear abuse. *Snider v. Washington Water Power Co.*, 66 Wash. 598, 120 Pac. 88; *Taylor v. Spokane, Portland & Seattle R. Co.*, 67 Wash. 96, 120 Pac. 889. We think there was no such abuse of discretion in this case as would warrant a reversal."

See, also, *Cranford v. O'Shea*, 75 Wash. 33, 134 Pac. 486; *Keough v. Seattle Elec. Co.*, 71 Wash. 466, 128 Pac. 1068; *Vowell v. Issaquah Coal Co.*, 31 Wash. 103, 71 Pac. 725.

VII. Over the objection of appellants, the respondents were permitted to testify to certain transactions leading up to the making of their contract with Mary Jeffs. It is contended that this evidence was improper and should have been excluded under the provisions of Rem. & Bal. Code, § 1211 (P. C. 81 § 1027). It seems to us that this statute has no application. The respondents in this action were suing the trustees on their own undertaking embodied in the three party agreement. The executors of the estate of Mary Jeffs were not parties to this action. Respondents were not suing on their contract with her, neither were they seeking to enforce any direct or implied promise made by her. It was, of course, necessary to show what services the respondents had actually rendered, in order to prove the value of those services. Some reference to the transactions had with Mary Jeffs could hardly have been avoided. The agreement of February 14th, upon which this action was based, was an agreement by which the appellants obligated themselves to pay

the reasonable value of the services rendered, thus removing it from any direct connection with the estate of Mary Jeffs. Those services contemplated the elimination of the claim of Sicade to three-fourths of the property which had been conveyed to him by Mary Jeffs. On the whole evidence, we think it was for the jury to say whether that agreement really had that effect. The fact that this property was afterwards passed through the estate of Mary Jeffs to the trustees does not change the purpose and effect of the agreement here sued upon. The fact that the undertaking of the trustees here sued upon was their own undertaking eliminates the applicability of the statute. The trustees must not be confused with the executors of Mary Jeffs' estate. Suppose this contract had been made by the trustees after the death of Mary Jeffs and that the Sicades had still been possessed of all the property conveyed to them by her. Under such circumstances it could hardly be claimed with reason that the statute now invoked could have any application. We see no difference in principle between the case supposed and that here presented.

It is also claimed that other testimony relative to the time and expenses of the respondents in an ancillary suit to enjoin Sicade from harassing Mary Jeffs was improperly admitted. We think, however, that, inasmuch as this was a necessary part of the service performed looking to the divesting of Sicade of the title to the property, this evidence was properly admitted.

One general observation seems called for touching all of the questions relating to the admission of evidence. The only effect that the evidence complained of could have had was to augment the recovery. No claim is made that the recovery is excessive, provided any recovery was permissible. Upon the whole record, we find no error justifying a reversal.

Judgment is affirmed.

MORRIS, C. J., CHADWICK, and FULLERTON, JJ., concur.