[No. 7410.   Decided December 2, 1908.]

S. WADE HAMPTON, *Respondent*, v. JAMES BUCHANAN *et al.,*
*Appellants.*[1]

CORPORATIONS—STOCK—SUBSCRIPTIONS—CONTRACT FOR PURCHASE— DEFINITENESS—SPECIFIC PERFORMANCE. A contract whereby a purchaser of corporate stock was to have the "option to come into the mill and take part in its management on the same terms" as provided for certain other stockholders, is too indefinite to warrant a specific performance conferring upon him the right to any particular office in the corporation, or to draw the same salary that the other officers were to be paid.

SAME—STOCKHOLDERS—CONTRACTS AS TO OFFICERS—LEGALITY— SPECIFIC PERFORMANCE. A promoters' contract between stockholders of a corporation placing upon the trustees the duty to elect certain officers at similar salaries is illegal and will not be specifically enforced.

WORK AND LABOR—CONTRACT FOR EMPLOYMENT—BREACH—MITIGATION OF DAMAGES. Recovery of the whole salary for a wrongful discharge from employment cannot be sustained where the plaintiff had obtained other employment at the same salary.

CORPORATIONS—ACTIONS AGAINST—SALARY OF OFFICERS. In an action brought against a corporation and its officers for a salary and a wrongful discharge from employment, resulting from collusion,

[1]Reported in 98 Pac. 374.

any judgment for the plaintiff should be against the corporation, and cannot be made a lien against the property of a colluding officer who was joined as defendant in the suit.

CORPORATIONS—STOCKHOLDERS—FRAUD UPON MINORITY STOCKHOLD-ERS—RECEIVERS. Equity will grant relief to a minority stockholder in a corporation by the appointment of a receiver where there was collusion between the officers to unfairly deal with the plaintiff by dismissing him from office and absorbing the profits of the business in large increased salaries to themselves.

FULLERTON, J. dissenting.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered February 7, 1908, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action for specific performance. Reversed.

*Frank D. Oakley* (*Chas. Bedford*, of counsel), for appellants.

*Blattner & Chester, J. M. Ashton*, and *L. B. da Ponte*, for respondent.

DUNBAR. J.—The respondent, having been removed from the office of secretary of the defendant corporation, Puget Sound Lumber Company, and basing his right to hold an office in said defendant corporation and to participate in the management thereof upon a certain contract, entered into by the company and himself at the time he became a stockholder therein, brought this action to compel defendants to restore him to office in said corporation and to have said contract specifically enforced. From the judgment and decree entered by the court in favor of respondent, appellants appeal.

The complaint is exceedingly lengthy, but the essential averments are, that the defendant Puget Sound Lumber Company is a corporation, legally organized, etc., whose principal object was the carrying on of a sawmill business and the manufacture of lumber; that the defendants Buchanan and McDaniels were its organizers, and constituted its first board

of trustees; that the defendants Buchanan and McDaniels importuned plaintiff to become a purchaser of the stock of the defendant corporation; that after several consultations and conferences between the parties, an agreement in writing was made, in words and figures as follows:

"Tacoma, Wash., August 7th, 1901.
"Mr. S. Wade Hampton, Seattle, Wash.:

"Dear Sir—The Puget Sound Lumber Co. of Tacoma has been incorporated with a capital stock of ($5,000) five thousand dollars, of which it is proposed to pay in at once three thousand dollars, leaving the unpaid balance of two thousand dollars to be paid in out of the earnings, in liquidation of deferred payments on machinery and equipment. We make you this proposition, viz.; We will increase our present holding of the stock of said company until we each have ten shares of one hundred dollars each, amounting to an investment of one thousand dollars each. We will devote our time and energy to the best of our ability to the careful and economical management and operation of said mill plant, receiving for our services the sum of one hundred dollars per month each, with the understanding that we shall draw only one-half of this amount each month, leaving the other half standing to our credit on the books of the company, until the deferred payments on machinery and equipment shall have been paid off (provided this contract shall not have been previously terminated in some other way), when we shall receive the unpaid balance of said salary. You for your part to take and pay for an amount of said stock equal to the amount held by each of us, viz: ten one hundred dollar shares, amounting to one thousand dollars, on the acceptance of this proposition when the deferred payments shall have been paid out, stock to the amount of said deferred payments not exceeding the unpaid balance of said capital stock, shall be issued in equal amounts to each of the parties to this agreement without any further payment on their part. It is understood that when the indebtedness as above specified has been paid out, you shall have the option to come into the mill and take part in its management on the same terms as ourselves.

"Puget Sound Lumber Co.
"C. McDaniels, Sec-Treas.
"James Buchanan, Pres.
"I accept the above proposition. S. Wade Hampton;"

that pursuant to such agreement, the plaintiff purchased ten
shares of the stock of defendant corporation, and paid there-
for the sum of $1,000; that when the conditions of said agree-
ment were fulfilled the plaintiff, who was then a resident of
Seattle, moved to Tacoma and commenced an active partici-
pation in the management of the corporation, being elected
president thereof; that the defendant Buchanan was its vice
president and manager, and the defendant McDaniels was its
secretary treasurer; that it was then agreed that each of the
said parties should draw a salary under the agreement in
writing above mentioned of the sum of $125 each per month;
that there should be allowed to Buchanan in consideration of
extra time and services the further sum of $25 per month;
that McDaniels, by reason of ill health, was unable to devote
his time and energies to the business, and that additional
burdens thereby fell upon plaintiff, and he demanded a raise
in his salary equal to that of the defendant Buchanan, which
demand was refused; that afterwards, on or about the 1st of
November, 1905, the defendant Buchanan purchased all of
the interests of the defendant McDaniels in the corporation;
that Buchanan was without means to pay the notes given for
said stock, and that McDaniels and Buchanan schemed and
conspired together to deprive the plaintiff of his actual par-
ticipation in the management of the affairs of the defendant
corporation, in order that the earnings of the corporation
might be diverted to secure the payment of said notes as they
matured, and for the further purpose of depriving the plaintiff
of his salary; that the business of the defendant corporation
has been prosperous and profitable; that shortly after the
purchase of the said stock by Buchanan, a special meeting
of the trustees of the defendant corporation was held and a
pretended election was held by which the defendant Winter-
mote, who had succeeded to the stock formerly owned by Mc-
Daniels, was chosen a trustee to fill the vacancy by the
resignation of the defendant McDaniels; that at the time of
the said election defendant Wintermote was not a stockholder,

and never took the oath of office prescribed by law for trustees
of corporations under the laws of the state of Washington;
that on the 14th day of November, 1905, another meeting of
the trustees was held, at which meeting, by vote of the defend-
ants Buchanan and Wintermote, the minutes of the trustees
meeting November 6, 1905, were changed and altered so that it
appeared that the resignation of the defendant McDaniels
as vice president and treasurer, as well as trustee also, was
accepted, when it had been agreed and understood that no
action was to be taken upon the said defendant's resignation
as vice president and treasurer, but that the same was to
remain in abeyance until the annual meeting of the defendant
corporation; that at said meeting by-laws were adopted for
the defendant corporation, which had been prepared by the
defendant Buchanan; that by these by-laws power to elect the
officers and appoint the agents and servants of the defendant
corporation was placed in the board of trustees; that the
number of officers was cut to two and the power to control
all the business of the defendant corporation was placed in
the president; that on the 22d day of November, 1905, the
defendants Buchanan and Wintermote pretended to· hold a
meeting of the trustees of the defendant corporation, at which
meeting they removed the plaintiff from the office of secre-
tary and proceeded to elect officers of said corporation; that
thereafter the plaintiff demanded of the said defendants
Buchanan and Wintermote that he be permitted to continue
in the service of said corporation as its secretary, and to con-
tinue to participate in the management of its business under
the agreement hereinbefore set forth; that such petition was
refused.

The complaint further alleges, in substance, that after
the affairs of the corporation were placed in the hands of
the defendants, they proceeded to raise their salaries and to
overdraw their accounts with the defendant corporation and
incur unwarranted indebtedness upon the defendant corpora-
tion, for the purpose and as a part of the fraudulent scheme

and conspiracy to cause the affairs of the corporation to become or appear to be involved, for the purpose of reducing and minimizing the apparent value of the plaintiff's stock in the said corporation and to deprive the plaintiff of the benefit of the agreement in writing hereinbefore set forth; and very much more to the same effect.

The plaintiff avers that there is imminent danger of defendant Buchanan, either by himself or in connection with the defendant Wintermote, selling, mortgaging, leasing, or otherwise incumbering said real and personal property in the furtherance of said fraudulent scheme, and asks that a preliminary restraining order may issue to the defendants Buchanan, McDaniels and Wintermote, to restrain them from transferring, selling, incumbering or in any way disposing of the stock of the defendant corporation pending a hearing of plaintiff's prayer; praying that a reciever of the defendant corporation may be appointed, and for damages to plaintiff from the defendants and each and all of them, in the sum of $2,000, and for a permanent injunction to restrain and enjoin the defendants from in any manner whatsoever refusing to permit the plaintiff to participate in the management of the defendant corporation at a salary equal to the highest amount paid as salary or otherwise, except as dividends, to the defendants Buchanan, McDaniels, or Wintermote, or either of them, and for general relief.

The answer denied the material allegations of the complaint—a demurrer having first been interposed to the effect that the court had no jurisdiction of the persons of the defendants or the subject-matter of the action, that the plaintiff had no legal capacity to sue, that there was a defect of parties plaintiff, that there was a defect of parties defendant, that several causes of action had been improperly united, that there was another action pending between the same parties to the same case, and that the complaint did not state facts sufficient to constitute a cause of action. This demurrer was overruled.

The judgment of the court was, that the plaintiff be declared to be the owner of and rightfully entitled to an interest in the property, rights and assets of the Puget Sound Lumber Company, to the extent and value of $5,487.08; that the claim of the said plaintiff for the said sum be and the same is declared a first lien and charge upon all the right, title and interest of the defendant James Buchanan in the property of the Puget Sound Lumber Company, defendant herein, and upon the stock of the said company as said defendant Buchanan's interest may appear to have been at the time of the execution and delivery of the certain agreement, aforementioned, for the purchase of the stock, right, title, and interest of the said Puget Sound Lumber Company at that time owned and held by Clinton McDaniels, one of the defendants named in this cause. The defendants were also enjoined and restrained from interfering with or refusing to permit the plaintiff to participate in the management and control of the business carried on by the defendants, on the same rate of remuneration enjoyed by the said defendants McDaniels, Buchanan and Wintermote, or either of them. Judgment, also, for costs.

The contract upon which the judgment is rendered in this case is too indefinite to form the basis of an action. The language, "You shall have the option to come into the mill and take part in its management on the same terms as ourselves," certainly does not guarantee the right to any particular office or to any office for any particular length of time. Nor does it necessarily imply that the respondent shall have the same salary as the other contracting parties. The management of one branch of the business might require a character of service which was worth more than some other character of service. The construction placed upon the language by appellant Buchanan was that they were each to receive remuneration in proportion to the value of the services rendered, and this is not an unreasonable construction. That the respondent him-

11—51 WASH.

self did not expressly rely on this agreement, and did not understand what it meant or what his rights under it were, is evident from the fact that, in response to a motion to make his complaint more definite and certain and to state specifically what office he was entitled to hold in the corporation and for what length of time, he answered as follows:

"Now comes the plaintiff in the above entitled cause, and complying with the order of this court heretofore made to state specifically what office plaintiff claims in the defendant corporation and for what length of time said office is claimed, states that the plaintiff does not lay claim of title to any specific office in the said corporation for any length of time whatsoever against the said corporation; but bases his right to equitable relief at the hands of this court upon the contracts and agreements between the plaintiff and the defendants or some of them, as set forth in the pleadings in this case."

It is evident from the memorandum opinion of the court filed in that case that the judgment was rendered upon this agreement, and that it held that the agreement was not unlawful, because, while it assumed to be an agreement with a corporation, it was in reality a partnership agreement. But whether it was originally a partnership or a corporation agreement, is not material, for the concern afterwards undoubtedly became a regular corporation; and after it did so become a corporation, it had to be governed by the laws governing corporations, and appellants' business had to be done through its trustees. There is no authority which would permit a corporation to enter into a contract which would place the trustees under obligations to disregard the duty they owed to the stockholders, viz., to promote the business interests of the corporation; and this they certainly could not do if they were so fettered by contract that they could not dismiss an employee and act freely and purely for the business interests of the stockholders when emergencies arose. The granting of such powers as are relied upon by the respondent through this agreement would virtually deprive the stockholders of the right to elect their trustees. Therefore, equity

will not assume jurisdiction to compel the specific performance of an illegal contract. That such a contract is illegal all authority asserts; but see especially, *West v. Camden,* 135 U. S. 507, 10 Sup. Ct. 838, 34 L. Ed. 254, and *Reed v. Johnson,* 27 Wash. 42, 67 Pac. 381, 51 L. R. A. 404. The policy of the law is not changed by the fact that the stockholders are many or few.

There seems to us to be nothing upon which to base the judgment for $5,487.08; for, in any event and under all authority, if respondent was damaged by wrongful dismissal from his employment, it was his duty to lessen his damage as much as possible by obtaining other employment, which he testifies that he almost immediately did, at the same salary. Neither could the judgment, if correct, be made a lien upon the property of Buchanan, for if respondent is entitled to a judgment at all, it should be a judgment against the corporation and not against an individual. This action shows in all of its features that it is an action against a corporation, and as such it should have been tried and decided; and while, for the reasons assigned, the judgment obtained cannot be sustained, the allegations of the complaint are sufficient to warrant the granting of some relief to respondent as a minority stockholder. *Theis v. Spokane Falls Gas Light Co.,* 34 Wash. 23, 74 Pac. 1004. We think such allegations are justified by the testimony, and that there was a collusion between Buchanan and Wintermote to unfairly deal with the respondent for the purpose of preventing him from receiving his just share of the profits of the business, by dismissing him from office and by absorbing the profits of the business in large and increased salaries appropriated to themselves, and to the exclusion of his rights as a minority stockholder.

We will, therefore, reverse the judgment; and, in consideration of the fact that there are no stockholders other than the parties to this contention to be affected, remand the case with instructions to the lower court that, in case a stipulation of settlement is not made, or if appellants shall not offer an

adjustment that appears fair and reasonable to the court, within thirty days from the filing of this opinion, that portion of appellant's prayer asking for the appointment of a receiver be granted, and that a receiver be appointed to settle up the affairs of the corporation.

HADLEY, C. J., MOUNT, and RUDKIN, JJ., concur.

FULLERTON, J. (dissenting)—I dissent from the disposition made of this case. The case should be sent back for further evidence as to the amount due the respondent, leaving that question to be determined by the court.