[No. 30142. Department One. August 18, 1947.]

CASCADE TIMBER COMPANY, *Appellant,* v. NORTHERN PACIFIC RAILWAY COMPANY *et al., Respondents.*[1]

[1]Reported in 184 P. (2d) 90.

*Maxwell & Seering,* for appellant.

*Robert S. Macfarlane* and *Dean H. Eastman,* for respondent Northern Pacific Railway Company.

*Eisenhower, Hunter & Ramsdell,* for respondent Northwest Door Company.

ABEL, J.—Plaintiff brought suit to compel defendant to execute and deliver to it a proper deed conveying the lands described in the contract, hereinafter referred to,

free and clear of encumbrances and restrictions, save and except mineral reservations. The real estate involved was purchased under an installment payment contract entered into by the parties on October 2, 1939, which contract provided for a total purchase price of $210,000. The last payment on the contract was made by plaintiff to defendant, October 2, 1944. Demand was made upon defendant for a deed, without reservations other than mineral rights, and, upon its refusal to convey, this action was started.

The complaint sets forth the contract, which provides, in part, as follows:

"1. The vendor, in consideration of the sum of two hundred ten thousand dollars ($210,000), to be paid as hereinafter agreed, and of the faithful performance of the covenants, agreements and conditions hereinafter expressed on the part of the purchaser, agrees to sell to the purchaser . . . [Then follows a description of the real estate and a reservation concerning certain minerals.]"

In paragraph 2 there· is a provision for payments, and paragraph 3 contains a provision that the purchaser can pay all or any part of the principal before it becomes due, in which event interest shall cease upon the payments made. Paragraphs 8 and 10 provide as follows:

"8. Should default be made in the payment of the principal or interest or in the payment of the taxes or assessments or in the performance of any covenant herein contained, and such default continue for a period of ten (10) days, then the vendor, after thirty (30) days' written notice, served by mail,· addressed to the purchaser at Tacoma, Washington, may terminate this contract, which shall thereafter be null and void, and all payments made and all buildings and improvements on said land shall be and forever remain the absolute property of the vendor, it being expressly understood and agreed that time is of the essence of this contract. But the purchaser shall be liable for, and shall pay to the vendor, the value of all timber cut at the rates provided in Paragraph 5 hereof, notwithstanding the contract may be cancelled by the vendor under this provision.

"The above provision shall constitute the exclusive remedy of the vendor for default, in consideration of which the purchaser, in the event of such cancellation, agrees to

transfer and convey to the vendor, or its assigns, the right to use or jointly use any and all rights of way and agreements for rights of way, it may possess, necessary or convenient for use in the future logging and removal of the timber on said described land."

"10. The purchaser agrees as one of the material considerations of this contract that rates being equal it will ship via the Northern Pacific Railway Company all logs, poles, timber and other products manufactured by it from the timber cut under this contract, or an equivalent quantity of lumber and other products manufactured by it from timber cut from lands not acquired from the vendor. Such shipments shall be made from time to time, in the ordinary course of business, as the timber is manufactured. Where the destination of the manufactured product is not on the line of the Northern Pacific Railway Company, such shipments shall be routed to favor said Railway Company with the longest haul, if the expense to the purchaser is not increased over the cost of shipment over another rail line. The purchaser shall make monthly reports to the vendor of shipments under this provision, and shall permit the vendor to examine the purchaser's records at any convenient time or place for the purpose of verifying such reports.

"The purchaser further agrees as one of the material considerations of this contract that it will offer to sell to the Northwest Door Company of Tacoma, Washington, a Washington corporation, all logs from the timber cut under this contract, suitable for its use, at the prevailing market price."

Defendant answered, admitting the contract and payment of the purchase price, but denied full performance of the contract, that demand for a deed had been made, and that defendant had refused to execute and deliver a deed.

By way of affirmative defense, defendant alleged that the contract had been entered into through the efforts of Northwest Door Company, intervener in the case, pursuant to a "promise and agreement" that, if the timber lands were sold to plaintiff, plaintiff would agree to offer to sell to intervener all logs from the timber cut from the lands sold, suitable for its use, at the prevailing market price; that compliance in part had been made under this agreement; that defendant had offered and now renewed its

offer to issue a deed containing the conditions and terms of the contract of sale and, particularly, including those terms contained in paragraph 10 of the contract, but that plaintiff would not accept a deed so issued.

The Northwest Door Company filed a complaint in intervention, in which it alleged that plaintiff was one of its sources of supply of logs; that it had aided plaintiff in the negotiation for a contract of sale of the lands here involved; that, subject to the contract, it had "orally agreed" with plaintiff for the purchase of logs suitable for its use at the prevailing market price; that a contract of sale of timber lands was entered into between plaintiff and defendant, which contract provided for the sale of logs to intervener; that plaintiff had sold logs to intervener pursuant to the agreement, but is now seeking to avoid this obligation; that intervener is still in the market for logs under the contract in question; that the contract was made for the use and benefit of intervener, and that, save and except that plaintiff had agreed to sell or offer to sell logs cut under the contract to intervener, defendant would not have entered into the contract of sale.

Plaintiff, in its reply, denied defendant's affirmative answer, except that it admitted the contract and the sale of logs to intervener; that much timber remained on the land, and that a dispute existed between itself and defendant over the form of a deed to the lands involved. Plaintiff also made answer to intervener's complaint, denying all except formal allegations, and that it had sold logs to intervener.

During the course of the trial, defendant was permitted to prove, over the objection of plaintiff, that, on and prior to October 2, 1939, defendant railway was the owner of certain timber lands in King county, Washington, which plaintiff was desirous of purchasing, and that, after contacting defendant, plaintiff was informed that it was defendant's policy to sell its timber to lumber manufacturers. This witness testified, under cross-examination, that this was defendant's policy in order that defendant railway would secure the transportation of the lumber products.

Intervener testified that, in the past, it had been purchasing logs from plaintiff; that plaintiff was its principal supplier of peeler logs; that it relied largely on the timber company for logs; that it was a substantial shipper over defendant's railway, and that it had promised defendant railway that it would route its total products manufactured from logs received from the land in question via the Northern Pacific.

· Plaintiff contacted intervener for the purpose of securing its aid in persuading defendant railway to make the sale to plaintiff, and, in return for such aid, plaintiff promised to sell to intervener all logs produced from the land in question which were suitable for the latter's use. Accordingly, intervener contacted defendant railway in an effort to negotiate for the sale of the timber land involved to plaintiff, and also promised defendant railway that, if the sale was made to plaintiff, intervener would route by the railway for shipment all logs or products made from the logs sold to it by plaintiff which were cut from the land in question.

The above oral agreements and representations were partly supported by letters introduced in evidence.

As a result of these negotiations, defendant railway agreed to make the sale to plaintiff, and the contract referred to above was entered into.

Performance of the contract was commenced and continued until about December, 1942, at which time plaintiff's controlling stock was acquired by the Anacortes Veneer Company or its representatives. Prior to the acquisition of the stock, the veneer company contacted defendant railway, inquiring whether it would consider waiving the provisions of paragraph 10 of the contract of sale. The railway company declined to waive such provisions, and it advised the Anacortes Veneer Company that full performance of plaintiff's contract would be required.

The cause was tried to the court, sitting without a jury. Thereafter, the court issued its decree dismissing plaintiff's

complaint with prejudice, except that it reserved to plaintiff the right to demand and receive from defendant a deed conveying the lands described in the contract of sale, upon the completion of the logging and full performance of paragraph 10, which is set out in the decree.

Plaintiff has appealed, and makes fourteen assignments of error, which it argues under three general heads: (1) defendant's affirmative defense; (2) complaint in intervention, and (3) the decree in the superior court.

Appellant claims that its motion to strike the affirmative defense and its demurrer to the affirmative defense of respondent, and its objection to the introduction of evidence in support thereof, should have been sustained for the reason that the contract is unambiguous, and, therefore, all representations and negotiations prior to its execution are immaterial, citing numerous cases, including *Ross v. Cappon,* 185 Wash. 389, 55 P. (2d) 329, in which we stated:

"In *Farley v. Letterman,* 87 Wash. 641, 152 Pac. 515 (not cited by respondent), we said that, where contracts completely embody the transaction, are free from ambiguity, and are not attacked on the ground of fraud, this court has uniformly held to the rule that parol evidence will not be received to vary or contradict the terms of the writing."

Appellant calls our attention to the fact that the judge who heard its motion to strike and demurrer, prior to the trial, stated, in his memorandum decision, that he found the contract unambiguous. However, the same judge who made this statement denied the motion to strike and overruled appellant's demurrer to the affirmative defense.

It has been appellant's contention throughout this controversy that the contract was fully performed upon its payment of the cash purchase price, and it asserts that, thereafter, it was not bound by the provisions of paragraph 10. On the other hand, respondent's contention has been that the obligations imposed by that paragraph were a part of the consideration for the sale, and that they are obligations which were not terminated merely by the payment of the cash purchase price.

It must be borne in mind that the contract, in paragraph 1, provided that the railway company agreed to sell the lands to appellant in consideration of the sum of $210,000, "and of the faithful performance of the covenants, agreements and conditions hereinafter expressed on the part of the purchaser, . . . " Then, there was the provision in paragraph 10 which, among other things, provided that:

"The purchaser agrees as one of the material considerations of this contract that . . . it will ship via the Northern Pacific . . . all logs, . . . and other products manufactured by it from the timber cut under this contract, . . .
"The purchaser further agrees as one of the material considerations of this contract that it will offer to sell to the Northwest Door Company . . . all logs from the timber cut under this contract, suitable for its use, at the prevailing market price."

■ Appellant brought this suit under its claim that the above provisions are not binding upon it, and so it follows that there are two diametrically opposed views as to the meaning of the provisions of the contract. To determine what kind of a deed appellant is entitled to receive, the court must determine the meaning of the language used in paragraph 10. The meaning can be found by ascertaining what was within the contemplation of the parties at the time the contract was entered into. The trial court was correct in denying the motion to strike the affirmative defense, overruling the demurrer, and permitting testimony to be received to explain this ambiguity. This evidence did not, in any way, contradict the terms of the contract. The particular thing that it did was to show the importance of paragraph 10 in the contract. We stated the rule, in *Seavey Hop Corp. v. Pollock*, 20 Wn. (2d) 337, 147 P. (2d) 310, as follows:

"May we say here that we are mindful of the general rule that parol evidence is not admissible for the purpose of adding to, modifying, or contradicting the terms of a written contract, in the absence of fraud, accident, or mistake. But, as stated in *Olsen v. Nichols*, 86 Wash. 185, 149 Pac. 668, parol evidence is admissible to show the situation

of the parties and the circumstances under which a written instrument was executed, for the purpose of ascertaining the intention of the parties and properly construing the writing. Such evidence, however, is admitted, not for the purpose of importing into a writing an intention not expressed therein, but with the view of elucidating the meaning of the words employed. Evidence of this character is admitted for the purpose of aiding in the interpretation of what is in the instrument, and not for the purpose of showing intention independent of the instrument. It is the duty of the court to declare the meaning of what is written, and not what was intended to be written. If the evidence goes no further than to show the situation of the parties and the circumstances under which the instrument was executed, then it is admissible."

The rule is further stated in 49 Am. Jur. 34, § 22:

"It is fundamental that in order to do this and to enable the court to decree specific performance, the terms of the contract must be clear, definite, certain, and complete. The contract must be free from doubt, vagueness, and ambiguity, so as to leave nothing to conjecture or to be supplied by the court. It must be sufficiently certain and definite in its terms to leave no reasonable doubt as to what the parties intended, and no reasonable doubt of the specific thing equity is called upon to have performed, and it must be sufficiently certain as to its terms so that the court may enforce it as actually made by the parties. A greater degree of certainty is required for specific performance in equity than is necessary to establish a contract as the basis of an action at law for damages."

Appellant contends that the trial court erred when it permitted respondent to introduce evidence relating to the acquisition by Anacortes Veneer Company of the controlling stock of Cascade Timber Company, on the ground that such evidence had no probative value and was totally immaterial to the issues involved. This evidence was introduced to show lack of good faith on the part of appellant. The rule is stated in 58 C. J. 1064, § 314, as follows:

"There are few cases in which courts of equity will insist on the maxim that he who seeks equity must do equity with more rigor than in suits for the specific performance of contracts. The facts and circumstances of each case must

control the court in its determination of the question of complainant's good faith."

■ Appellant next claims that respondent, in its affirmative defense, set out an independent oral promise and agreement between appellant and Northwest Door Company regarding the sale of logs by appellant to that company. Appellant further claims that this related to and involved matters preceding the execution of the contract, and, in addition, raised a collateral matter not in any wise connected with appellant's right to a deed under the contract. In support of this contention, appellant cites the cases of *Farley v. Letterman,* 87 Wash. 641, 152 Pac. 515, *Ross v. Cappon,* 185 Wash. 389, 55 P. (2d) 329, also 2 Jones on Evidence, Civil Cases (4th ed.) 836, § 439.

In *Farley v. Letterman, supra,* a lease had been executed on January 22, 1912, and a prior letter had been written in December, 1911, which, to some extent, contradicted or varied the terms of the lease as it was executed. We there held that all prior offers and negotiations had been merged in the written lease, and that no other evidence was competent to vary it. In that case, we stated the rule as follows:

"Where contracts completely embody the transaction, are free from ambiguity, and are not attacked on the ground of fraud, this court has uniformly held to the rule that parol evidence will not be received to vary or contradict the terms of the writing. [Numerous cases cited.]"

There we stated that where the contract is "free from ambiguity," then "parol evidence will not be received to vary or contradict the terms of the writing." In the case at bar, the contract is ambiguous. Furthermore, the evidence was not received to vary the terms of the contract, but was in conformity with the contract and showed that the provisions of paragraph 10 were material considerations for the execution of the contract.

In the case of *Ross v. Cappon, supra,* certain machinery had been sold on a written contract, with a guarantee, and we stated:

"It will be noted that the guarantee above set forth is plain and unambiguous."

Appellant has taken the position that it is not bound by the terms of paragraph 10 of the contract. It says that, as soon as it has paid the cash purchase price, it is entitled to the deed. In effect, it says that respondent sold its lands and the timber thereon for so many dollars, and that, when the cash purchase price was paid, appellant was entitled to a deed free from any reservation except certain mineral rights.

On the other hand, respondent has taken the position that it sold its lands and the timber thereon, under a contract, for three reasons: (1) That it was to receive so many dollars; (2) that the timber cut on this land would be, as far as practicable, shipped over its railroad, and (3) that certain types of timber cut from the land would be offered, at the market price, to intervener.

It is apparent that we must either take the actual wording of the contract and say that respondent is entitled to haul the products of the timber cut from these lands, or find that there is an ambiguity in the contract; and, therefore, respondent was entitled to show all of the representations and promises made by appellant to induce the railway company to enter into the contract, which promises and representations establish the fact that one of the prime considerations for the execution of the contract was appellant's promise, as made in paragraph 10 of the contract, to sell the logs to Northwest Door Company so that, thereby, the railway company would haul the products of the timber.

Appellant further contends that intervener has no such an interest as to justify intervention, and states that it is not sufficient that the intervener be interested in the success or failure of either the appellant or the respondent railway in this litigation; that the interest mentioned in the statute is a direct and immediate interest, and there must be such an interest that the intervener will either gain or lose by the direct legal operation and effect of the

judgment. The statute providing for intervention (Rem. Rev. Stat., § 202 [P.P.C. § 61-1]) is as follows:

"Any person may, before the trial, intervene in an action or proceeding, who has an interest in the matter in litigation, in the success of either party, or an interest against both. An intervention takes place when a third person is permitted to become a party to an action or proceeding between other persons, either by joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendant in resisting the claims of the plaintiff, or by demanding anything adversely to both the plaintiff and the defendant, and is made by a complaint setting forth the grounds upon which the intervention rests, filed by leave of the court or judge on the ex parte motion of the party desiring to intervene."

Intervener alleged that, because it was a producer of freight for respondent, appellant solicited intervener's aid in negotiating with respondent for purchase of the land under the contract, which is the basis of this suit; that intervener was desirous of buying the timber and

". . . orally agreed with plaintiff that if plaintiff would sell and deliver all of the logs from said lands that were suitable for its use, that it would endeavor to persuade Northern Pacific Railway Company to enter into the contract of sale with plaintiff. . . ."

Further, that intervener did negotiate with respondent and did aid appellant in persuading respondent to enter into the contract. Intervener refers to the contract, attached to appellant's complaint, and alleges that the contract provides:

"The purchaser further agrees as one of the material considerations of this contract that it will offer to sell to the Northwest Door Company of Tacoma, Washington, a Washington corporation, all logs from the timber cut under this contract, suitable for its use, at the prevailing market price."

In support of its contention, appellant cites the cases of *State ex rel. Williams v. Superior Court,* 91 Wash. 40, 157 Pac. 28, and *State v. Roff,* 178 Wash. 311, 34 P. (2d) 899.

*State ex rel. Williams v. Superior Court, supra,* was a case where a railroad company had entered into a contract

for the construction of a part of its road. The principal contractor made an assignment of this contract, which assignment made the original contract a part thereof. The assignee then entered into a subcontract with intervener for the construction of a small part of the work. This last subcontract had a different unit price than the principal contract, and the principal contract was not referred to nor was it made a part of the subcontract. The assignee of the principal contract brought an action against the original contractor, his assignor, and the railroad company, for a balance due under the contract. This balance was made up of underestimates, erroneous classification, extra expense caused by alteration of the plans, and other similar items. After the action had been instituted, the subcontractor filed his complaint in intervention, claiming that, under his contract with the assignee of the original contractor, there was a balance due him for extra work and erroneous classification. In that case, we said:

"The rule being that the interest mentioned in the statute which entitles a person to intervene in a suit between other parties must be of such a direct and immediate character that the intervener will either gain or lose by the direct legal operation and effect of the judgment, it remains to inquire whether the intervener here is within the rule. The intervener being a mere subcontractor under Cross, Duffy & Heckman, there was no privity of contract between him and the defendants in the action, and he therefore could not maintain an action against such defendants. [Citing cases.] . . .

"The intervener will neither suffer loss nor gain by the direct legal operation and effect of whatever the judgment may be in the action between the original parties. If the plaintiff lose in that action, the intervener still has a right to sue the plaintiffs upon his contract. If the plaintiff prevail in that action, the intervener's rights upon his claim against the plaintiff are not affected. His rights are upon a contract with the plaintiff alone. He has no rights growing out of any contract with the defendants; there is no contractual relation between him and the defendants."

In the case of *State v. Roff, supra,* a man by the name of Lloyd held a chattel mortgage on certain wheat, and

sued the state in debt, alleging that the state had agreed to pay him an amount equal to the excess, if any, that the state received upon a resale of the wheat. Roff filed a petition in intervention, denying the agreement set up in Lloyd's complaint against the state, and alleging that Lloyd had canceled a chattel mortgage formerly held by him on the wheat, further setting up an alleged agreement between the state and the interveners whereby the state agreed to pay them any surplus it received on a resale of the wheat. We denied the right to intervene, and stated:

"If the state promised to pay the interveners a sum of money from whatever source, they may sue to recover, but that does not give them any right, by way of intervention, to prevent or attempt to prevent another party from collecting, on the state's express contract to pay money to such other party."

*McNamara v. Crystal Mining Co.,* 23 Wash. 26, 62 Pac. 81, cited by appellant, was a case where we held that a third party has no right to intervene in an action merely because the defendant was asserting an adverse claim to such third party's property, as well as to that of the plaintiff, when the rights attempted to be set up by means of the intervention affected entirely different property from that involved in the plaintiff's action.

We approved the right to intervene in the following cases:

*North Coast R. Co. v. Gentry,* 58 Wash. 82, 107 Pac. 1060, where we held that a lessee of property which was being condemned was entitled to separate damages, and, therefore, had the right to intervene because he had an interest in the subject matter.

*Atkinson v. McCarthy,* 142 Wash. 1, 251 Pac. 861, was an action to foreclose a logger's lien, and we held that it was proper for one holding the legal title and the right to possession to intervene.

In *Tacoma v. Nyman,* 154 Wash. 154, 281 Pac. 484, intervention was permitted by parties claiming an interest in lands being appropriated in eminent domain proceedings.

*State ex rel. Resburg v. Superior Court,* 168 Wash. 384,

12 P. (2d) 420, was an action to quiet title, and third persons intervened claiming title. We held that they had a direct and immediate interest entitling them to intervene.

*State v. Inland Empire Refineries, Inc.*, 3 Wn. (2d) 651, 101 P. (2d) 975, was a suit brought to collect an excise tax. A railroad company intervened, claiming that it was obliged, under its contract with the refinery, to pay any tax found to be due. We permitted the railroad company to intervene, and, with reference to Rem. Rev. Stat., § 202, said:

"That section of the statute permits any person to intervene in an action who has an interest in the matter in litigation, in the success of either party, or an interest against both. The railway company, under its contract with the Inland Empire Refineries, Incorporated, was required to pay, in addition to the stated price per barrel for fuel oil, any tax lawfully found due."

*Park v. Stolzheise*, 24 Wn. (2d) 781, 167 P. (2d) 412, was a case brought to enjoin the conducting, operating, and maintaining of a sanitarium for mental cases upon real property located within an area covered by a certain zoning resolution. We permitted additional property owners to intervene, stating that they had a vital interest in the matter in litigation.

Appellant further argues that this court has said that the right of a party not privy to a contract to claim benefits thereunder should not be extended to new and doubtful cases, citing *Horstmann Co. v. Waterman*, 103 Wash. 18, 173 Pac. 733, 1 A. L. R. 856; *Schoemer v. Zeran*, 126 Wash. 219, 217 Pac. 1009; *Tacoma v. Young*, 170 Wash. 385, 16 P. (2d) 617; *Priestley v. Peterson*, 19 Wn. (2d) 820, 145 P. (2d) 253, and *Ridder v. Blethen*, 24 Wn. (2d) 552, 166 P. (2d) 834.

*Horstmann Co. v. Waterman, supra,* was a case where a person sold the stock of a corporation and retained a portion of the assets, but agreed with the buyer and the corporation to pay all of the debts of the corporation. However, a third party agreed with the corporation and the buyer to guarantee the seller's performance of his agreement, and

we held that this guarantee contract did not make the guarantor liable to the creditors, although they were indirectly interested in his performance, since the guarantee was intended only for the benefit of the promisees.

In the case of *Schoemer v. Zeran, supra,* a mortgagee promised to pay certain advances to the mortgagor for the completion of a building under construction, and we held that such an agreement was not such a direct promise to pay to a particularly named person an existing obligation that could be claimed by parties holding liens on the building. In that case, we stated:

"This court, it is true, has a number of times decided that, where one person, for a valuable consideration, makes a promise to another to pay the debt of that other to a third person, such third person may maintain an action in his own name upon the promise. The cases so holding decided prior to the case of *Hart v. Bogle,* 88 Wash. 125, 152 Pac. 1010, will be found collected in that case. Subsequent cases where the general rule is referred to are *Horstmann Co. v. Waterman,* 103 Wash. 18, 173 Pac. 733, 1 A. L. R. 856, and *Moore v. Baasch,* 109 Wash. 568, 187 Pac. 388. But an examination of the several cases in which the rule was applied will show that the promise enforced was a direct promise to pay to a particularly named person an existing obligation, not a general obligation to pay the costs of performing a particular undertaking, such as was the promise in the present case. In the case of *Horstmann v. Waterman,* we said it was not our disposition to extend the rule to new and doubtful cases and, unquestionably, to apply the rule here would extend it further than we have heretofore gone."

*Tacoma v. Young, supra,* was a case where a bid was made to the city for the purchase of certain property, and the case turns upon the terms of the bid. We held that the city, by reason of the conditions in the bid, was not entitled to the status of a preferred creditor.

In the case of *Priestley v. Peterson, supra,* suit was brought to force a claimed liability on the part of the defendant by reason of a contract he entered into with some other parties, and, in that case, we stated:

"Examination of the record discloses no evidence that appellant ever intended to assume liability for the unpaid portion of respondent's contract. The fact that payments on account of the contract were made out of funds which appellant advanced in an attempt to rehabilitate the mine is insufficient in law to show an intent on the part of appellant to assume the agreement. Neither did appellant's acts warrant a holding that as matter of law appellant assumed the contract."

Appellant further states that it is fundamental that an intent or purpose to make a gift must be established before a third party may be said to have such an interest as would bring it within the claims of a donee beneficiary, citing the case of *Ridder v. Blethen, supra.* This case involved a suit by one of the sons of Clarence B. Blethen, and that son's assignee, to establish his rights as a third-party beneficiary under a contract which had been entered into by Clarence B. Blethen and three other men regarding the stock of the Seattle Times. In that case, we stated:

"It is plain from the very terms of the supplemental agreement that the main purpose of Blethen and Ridder Brothers, in executing it, was to carry out the obligations assumed under the tripartite agreement and to provide for the management and control of the Seattle Times, not only during Blethen's life time, but also in the contingency of his death within twenty-one years. . . .

"If there is anything clear from these contracts and the circumstances surrounding their execution, it is that Colonel Blethen's unswerving purpose was to maintain his own and (after his death) his family's control of the Seattle Times. And, to this end, he disinherited his son Clarence. That he had good and sufficient reason for so doing, is not only demonstrated by the evidence, but also in the very inception of this suit. What he greatly feared has come to pass: The control of the Times by the Blethen family is threatened by the action of an irresponsible son. Obviously, to hold that Clarence is a donee beneficiary under paragraph eight, would be to defeat one of Colonel Blethen's main objectives in his deal with Ridder Brothers."

In the above case, we also stated:

"To constitute one a donee beneficiary, it must appear

that the contract was designed for his benefit, or that it was the intent and purpose of the parties to bestow a benefit or gift upon him. [Citing cases.]"

It is apparent that the contract upon which the suit was brought in the *Blethen* case was not entered into in any wise for the benefit of the son, Clarence Blethen, but that, instead, it would have defeated the purpose for which the contract was executed to have permitted the son to enforce any rights thereunder.

We have permitted a third-party beneficiary to maintain an action in its own behalf to enforce the obligation in the following cases: *Reiley v. Spokane Sanitary Laundry Co.,* 71 Wash. 516, 128 Pac. 1075; *Union Machinery & Supply Co. v. Darnell,* 89 Wash. 226, 154 Pac. 183, and *Zioncheck v. Hepden,* 144 Wash. 272, 257 Pac. 835, where we said:

"The rule in this state is that, where one person for a valuable consideration makes a promise to another to pay the debt of that other to a third person, such third person may maintain an action in his own name upon the promise and against the promisor alone. *Hart v. Bogle,* 88 Wash. 125, 152 Pac. 1010; *Union Machinery & Supply Co. v. Darnell,* 89 Wash. 226, 154 Pac. 183."

Also in *Pacific Mercantile Agency v. First Nat. Bank of Ferndale,* 187 Wash. 149, 60 P. (2d) 6, in which we said:

"The question is whether that company has a right to recover on the alleged ground that the contract to pay for the building materials, as set out, was for its benefit. It is the law that, where one person, for a valuable consideration, makes a promise to another to pay the debt of that other to a third person, such third person may maintain an action in his own name upon the promise and against the promisor. *Hart v. Bogle,* 88 Wash. 125, 152 Pac. 1010. Many other cases from this court might be cited in support of the rule, but it is so well settled that this is not necessary.

"Before a third party can recover upon a contract made for his benefit and to which he is not a party, it must appear to have been the intention of the parties to secure to him personally the benefit of the provisions of the contract. *Sayward v. Dexter Horton & Co.,* 72 Fed. 758; *Horstmann Co. v. Waterman,* 103 Wash. 18, 173 Pac. 733, 1 A. L. R. 856."

■ Appellant's argument is that intervener is not a third-party beneficiary under the contract, and that respondent did not intend to make a gift to intervener. Appellant quotes the testimony of one of respondent's witnesses to the effect that the only concern of the railway company was to procure the maximum amount of freight from the timber and timber products from any lands sold, and therefore, appellant claims that the railroad company intended no gift.

Intervener did have a vital interest in requiring appellant to perform the conditions of the contract, particularly that part having to do with the sale of certain timber by appellant to intervener. The contract specifically requires this to be done. The oral agreement of appellant to deliver logs to intervener was evidence of the intention of the parties and the construction they desired to place upon the contract. The railway company specifically intended and required that intervener should have certain rights (which amount to a gift), because of the fact that the railway company knew that it would get the freight haul on those logs if intervener received them. The Northwest Door Company had a sufficient interest in the litigation to entitle it to intervene.

Appellant criticizes that part of the decree which provides for the dismissal of the action, and also that part which states:

". . . except that there is reserved to the plaintiff the right to demand and receive from defendant a deed conveying to plaintiff the timber lands described in said contract when the plaintiff has completed the logging of the merchantable timber now on said land, and has fully performed the covenants of paragraph 10 of said contract . . ."

Appellant alleges that the contract did not require it to cut and remove the timber, and that the trial court, in effect, granted specific performance only after it had written a new and different agreement for the parties. Appellant cites 12 Am. Jur. 749, Contracts, § 228, as follows:

"Interpretation of an agreement does not include its modification or the creation of a new or different one. A court is not at liberty to revise an agreement while professing to construe it."

The trouble with appellant's argument is that the decree does not obligate it to log the lands. The logging would have to be done before appellant could comply with the terms of the contract, and it is not entitled to a deed until it has complied with the terms of the contract.

■ Appellant states that the contract provides that "The purchaser agrees as one of the material considerations of this contract that rates being equal it will ship via the Northern Pacific Railway . . . ," and then argues that its only obligation under the contract was to ship via Northern Pacific logs "cut under this contract," and that, since it has paid up its obligation under the contract, it is relieved from the obligations imposed by paragraph 10. Appellant says that the phrase "this contract" appears many times throughout the agreement, and that a reading of the entire contract clearly shows that the phrase means the period of time from the date of the execution of the contract until the cash purchase price was paid in full.

We are unable to follow appellant's argument in this respect. A reading of the entire contract shows that respondent railway company was seeking to accomplish three things: (1) payment of the cash purchase price; (2) shipment over its railroad of all logs and other products manufactured from the timber cut under the contract, and (3) sale to intervener of all logs suitable for its use. The contract does not even specifically call for issuance of a deed, and it provides for termination of the contract in case of default " . . . in the payment of principal or interest or in the payment of the taxes or assessments *or in the performance of any covenant herein contained,* . . . ." (Italics ours.)

■ Appellant next argues that, although it does not admit that the provisions of paragraph 10 are binding subsequent to the payment of the full cash purchase price, in the event the provisions of paragraph 10 are still in

effect, they are independent covenants, for the breach of which respondent railway company may be compensated in damages, calling our attention to the following rule announced in 14 Am. Jur. 488, Covenants, Conditions and Restrictions, § 10:

"As a rule, however, where a covenant relates to only part of the consideration upon both sides and a breach of such covenant may be compensated in damages, it is an independent covenant and an action may be maintained for a breach of the covenant on the part of the defendant, without averring performance or an offer to perform."

Appellant also cites the case of *Marshall v. Campbell*, 19 Wn. (2d) 497, 143 P. (2d) 449, where this court had under consideration a contract providing for the sale of lands, which contract contained a covenant that the purchaser agreed to use the property for the purpose of selling and distributing gasoline acquired exclusively from the seller or party or parties designated by the seller. The contract contained an all-inclusive forfeiture clause. We held that this covenant relating to the use of the property and the purchase of gasoline from the seller or a party designated by the seller was an independent covenant, for which the seller could be compensated in damages, and denied the claim of the seller to forfeit the contract, stating the rule to be as follows:

"This and others of our decisions warrant the following statement of the rule for determining whether a covenant is dependent or independent: If the covenant is inherent in the subject matter of sale or is inseparable from the consideration as a whole, it is dependent; otherwise, it is independent. *Tacoma Water Supply Co. v. Dumermuth,* 51 Wash. 609, 99 Pac. 741; *Spokane Canal Co. v. Coffman,* 54 Wash. 645, 103 Pac. 1106; *Benham v. Columbia Canal Co.,* 74 Wash. 110, 132 Pac. 884; *Ihrke v. Continental Life Ins. & Inv. Co.,* 91 Wash. 342, 157 Pac. 866, L. R. A. 1916F, 430."

In considering the above case, we further stated:

"In the light of these decisions and the principles enunciated in them, it would hardly seem open to question that appellants' covenant to buy gasoline from respondents or a party designated by them is independent of the cove-

nants to convey and to pay the purchase price. The contract not only expressly stipulates that the 'full purchase price' is four thousand dollars, but also provides for acceleration of deferred payments at the election of the vendees. Upon payment of the 'full purchase price of four thousand dollars,' vendees would be entitled to a deed, yet their obligation to buy gasoline from 'Seller or party . . . designated by Seller' would continue 'to the date when the last payment under [the] contract would ordinarily have been made.' Obviously, appellants' obligation to buy gasoline is wholly independent of their obligation to pay the purchase price; on the other hand, respondents' obligation to convey is in nowise dependent upon appellants' purchase of gasoline from them or from some one designated by them.

"Although possibly beside the question, it may be observed that an action for damages affords a complete and adequate remedy for breach of the covenant. We can conceive of nothing more susceptible of accurate measurement than the loss of profits the respondents have sustained by the refusal of appellants to buy gasoline from them or from the party designated by them. See *Deming v. Jones,* 173 Wash. 644, 24 P. (2d) 85."

If the provisions of paragraph 10 are dependent covenants and not independent covenants, then they are binding upon appellant, and, in the event appellant fails to comply with the provisions of that paragraph, respondent railway company could declare forfeiture, and it is not relegated to an action for damages for failure to comply.

This suit was brought to require respondent to make, execute, and deliver to appellant a deed to certain lands described in the contract, subject only to certain reservations of mineral rights. Respondent offered to give appellant a deed, subject to the conditions specified in paragraph 10. The fact that appellant has paid the cash purchase price does not require respondent to waive the conditions of paragraph 10, even though those provisions are independent covenants.

In the case of *Marshall v. Campbell, supra,* the contract under consideration recited that the " 'full purchase price [is] four thousand dollars,' " and the contract provided for the issuance of a deed upon payment of that purchase price, payments to be made over a period of years, although

deferred payments could be accelerated. However, the obligation to buy gasoline from the seller or party designated by the seller would continue to the date when the last payment under the contract would ordinarily have been made. We held that the covenant regarding the purchase and sale of gasoline was an independent covenant. However, we stated the rule to be " . . . If the covenant is inherent in the subject matter of sale or is inseparable from the consideration as a whole, it is dependent; . . . ".

In the instant case, the evidence is that the sale would not even have been considered without the provisions contained in paragraph 10 of the contract. The whole contract indicates that the provisions of paragraph 10 are inseparable from the consideration as a whole. We therefore conclude that the provisions of paragraph 10 are not independent covenants.

Finally, appellant argues that the construction of paragraph 10 of the contract, by the trial court, makes the vesting of title to the lands in appellant subject to a condition precedent, in that title is to vest when appellant has completed the logging of the merchantable timber now on the lands and has fully performed the covenants of paragraph 10. Therefore, appellant argues, the decree of the trial court places a construction upon the contract which violates the rule against perpetuities. Appellant cites many authorities to bear out its contention; however, we will not enter into a discussion of these citations or an analysis of the contract to determine whether it violates the rule against perpetuities, for the reason that such a construction could not aid appellant.

■ Appellant's position is that, in order to prevail in this lawsuit, it relies upon a contract which would be void if, by reason of paragraph 10, it violated the rule against perpetuities. The contract must be construed as an entirety. The provisions of paragraph 10 go to all of the contract, and, if they are void by reason of the rule against perpetuities, then the whole contract is void and unenforcible.

The general rule is stated in 58 C. J. 971, Specific Performance, § 157, as follows:

"As a general rule a court of equity will, on its own motion, deny specific performance if it appears that the agreement sought to be enforced is illegal because it involves a violation of some statutory provision, some other rule of law, or tends to injure or is detrimental to the public good and is contrary to public policy."

In 49 Am. Jur. 29, Specific Performance, § 19, it is stated as follows:

"Equity will not specifically enforce a contract void at law for illegality, and where a contract grows immediately out of or is connected with an illegal act, equity will not decree its specific performance. It may therefore be stated as a general proposition that an act which the law prohibits to be done is insofar infirm that a court of equity will not lend its aid to enforce its performance. Thus, it is said that an express statutory restriction will not be ignored by the courts, but will be enforced by refusal of equity to decree specific performance of contracts made contrary to the statute."

In the same volume, at p. 30, § 20, we find the following:

"Thus, on the grounds of public policy equity has refused to decree specific enforcement of contracts involving purchase by a trustee of trust property, designed to thwart the policy of the government in the homestead laws, which provide for the giving of assistance to a felon to enable him to escape arrest, which violate the rule against perpetuities."

5 Williston on Contracts (Rev. ed.) 4560, § 1630, reads:

"It is commonly said that illegal bargains are void. This statement, however, is clearly not strictly accurate. It is more correct to say that 'a party to an illegal bargain generally can neither recover damages for breach thereof, nor, by rescinding the bargain, recover the performance that he has rendered thereunder or its value.' It is true that a court could only under very exceptional circumstances enforce specifically an illegal bargain, but the rule of public policy that forbids an action for damages for breach of such an agreement is not based on the impropriety of compelling the defendant to pay the damages; in itself that would generally be a desirable thing. When relief is denied it is either because the plaintiff is a wrongdoer, and such a person the law does not aid, or, in exceptional cases,

because the transaction is declared absolutely void by the law."

In 3 Pomeroy's Equity Jurisprudence (5th ed.) 645, § 929, it is stated:

"A court of equity does not aid a party to *enforce* an illegal transaction which is still executory."

Further, at p. 646, § 929, we find this statement:

"If the contract has been executed by the payment of the money, conveyance or delivery of the property, and the parties have equally participated in the wrong, and are equally in fault, the court, unless compelled to do so by statute, does not generally interpose its aid."

The same author, in vol. 2, p. 117, § 402, states:

"Another very common occasion for invoking the principle is illegality (see §§ 929, et seq.). Wherever a contract or other transaction is illegal, and the parties thereto are, in contemplation of law, *in pari delicto,* it is a well-settled rule, subject only to a few special exceptions depending upon other considerations of policy, that a court of equity will not aid a *particeps criminis,* either by enforcing the contract or obligation while it is yet executory, nor by relieving him against it, by setting it aside, or by enabling him to recover the title to property which he has parted with by its means."

In Pomeroy's Specific Performance of Contracts (3d ed.) 642, § 280, the following statement is made:

"An illegal contract is, as a rule, void—not merely voidable—and can be the basis of no judicial proceeding. No action can be maintained upon it, either at law or in equity."

And again, in the same text, p. 651, § 286, it is stated:

"Where two persons with equal knowledge and equally participating in the fault, have entered into an illegal agreement, and one of them has obtained by the other's voluntary act all the benefit of it for himself, his refusal to perform on his own part is, generally considered in itself alone, unjust and inequitable; but the law sustains him in this position, because it takes into account the interests of society and of the state, which demand the complete suppression of such agreements."

The following Washington cases support the above-mentioned rule: *Reed v. Johnson,* 27 Wash. 42, 67 Pac. 381; *Hampton v. Buchanan,* 51 Wash. 155, 98 Pac. 374; *McMillan v. Wright,* 56 Wash. 114, 105 Pac. 176; *Cascade Public Service Corp. v. Railsback,* 59 Wash. 376, 109 Pac. 1062; *Stirtan v. Blethen,* 79 Wash. 10, 139 Pac. 618; *Horejs v. American Plumbing & Steam Supply Co.,* 161 Wash. 586, 297 Pac. 759.

The case of *Reed v. Johnson, supra,* involved a contract between the owners of land and an agent or trustee for certain officers of a railway corporation, in which the agent agreed to locate a railroad depot on the owners' land, and the owners agreed to sell the land and divide the proceeds with the railway officers. We held that specific performance of the contract could not be decreed for the reason that it was in violation of public policy, and stated:

"The respondents by their cross complaint were asking for a specific performance of the contract, by decreeing a conveyance to them of the lands claimed by them under their contract. Before they are entitled to the relief of specific performance, it must appear that the contract which they seek to enforce has all the elements of an enforceable contract. If the contract is illegal and void for reasons of public policy, specific performance will not be enforced.

" 'Equity will not assume jurisdiction to compel the specific performance of a contract that is illegal in any of its features. If the nature of the contract is such that its enforcement would be in violation of public policy, specific performance will not be granted. The least taint of illegality or want of equity will preclude a decree.' 22 Am. & Eng. Enc. Law, p. 1014, par. 4."

In *Hampton v. Buchanan, supra,* we stated:

"There is no authority which would permit a corporation to enter into a contract which would place the trustees under obligations to disregard the duty they owed to the stockholders, viz., to promote the business interests of the corporation; and this they certainly could not do if they were so fettered by contract that they could not dismiss an employee and act freely and purely for the business interests of the stockholders when emergencies arose. The granting of such powers as are relied upon by the re-

spondent through this agreement would virtually deprive the stockholders of the right to elect their trustees. Therefore, equity will not assume jurisdiction to compel the specific performance of an illegal contract."

In the case of *Stirtan v. Blethen, supra,* we had under consideration a secret contract employing an agent who, without disclosing the principal, was to hire an office, hold public meetings, hire canvassers, and circulate petitions to secure the recall election of certain officials, which contract we held to be contrary to public policy and void, stating:

"Where a plaintiff, to make a case, must rely upon the illegal contract itself, he cannot recover. The law will aid neither party to an illegal agreement, but will leave the parties where it finds them. *Reed v. Johnson,* 27 Wash. 42, 67 Pac. 381, 57 L. R. A. 404; *Hoffman v. McMullen,* 83 Fed. 372; *Smith v. David B. Crockett Co.,* 85 Conn. 282, 82 Atl. 569, 39 L. R. A. (N. S.) 1148; *Samuels v. Oliver,* 130 Ill. 73, 22 N. E. 499; *Gibbs v. Consolidated Gas Co. of Baltimore,* 130 U. S. 396."

In the case of *Starcher Bros. v. Duty,* 61 W. Va. 373, 56 S. E. 524, 123 Am. St. 990, 9 L. R. A. (N.S.) 913, the court had under consideration a suit for specific performance of an option contract for the purchase of land, which contract the court held to violate the rule against perpetuities, stating:

"The contract, therefore, is illegal, and was void from its very inception, and everything done by either of the parties designed to carry the contract into effect which is auxiliary thereto must be considered as unauthorized and inoperative."

The following cases from other jurisdictions involve the construction of deeds or contracts held to be violative of the rule against perpetuities and, therefore, void and unenforcible. They all support the principle announced in the above quotation from *Starcher Bros. v. Duty, supra. London & South Western R. Co. v. Gomm* (1881), 20 Ch. D. 562; *Hardy v. Galloway,* 111 N. C. 519, 15 S. E. 890, 32 Am. St. 828; *Winsor v. Mills,* 157 Mass. 362, 32 N. E. 352; *Turner v. Peacock,* 153 Ga. 870, 113 S. E. 585; *Skeen v.*

*Clinchfield Coal Corp.*, 137 Va. 397, 119 S. E. 89; *Henderson v. Bell*, 103 Kan. 422, 173 Pac. 1124; *Pure Oil Co. of the Carolinas v. Baars*, 224 N. C. 612, 31 S. E. (2d) 854, and *Barton v. Thaw*, 246 Pa. 348, 92 Atl. 312, Ann. Cas. 1916D, 570, where the court stated that the right attempted to be given ". . . is null and void, as against the land, and was so from the time of its execution, and no legal rights which can be enforced against the land passed . . ."

■■ Appellant is seeking specific performance of a contract, which is a proceeding in equity. However, appellant has refused to accept a deed containing the terms of the contract, namely, the provisions of paragraph 10. Appellant admits that it has not complied with the provisions of paragraph 10, yet it is seeking specific performance in order that it can avoid its obligation to perform those provisions.

The principle of law is stated in 49 Am. Jur. 10, § 6:

"The remedy of specific performance is an equitable remedy governed by equitable principles; equity will not decree specific performance of an inequitable contract or an unconscionable bargain, but will leave the party to his remedy at law. It will not grant such relief when it would be contrary to equity and justice to do so. One coming to a court of equity for specific performance must show that there is equity and good conscience in support of his claim to relief. He must come into court with clean hands, and, seeking an equitable remedy, he must himself do equity."

And, in 58 C. J. 1063, § 314, it is stated:

"Specific performance of a contract rests in the sound judicial discretion of the court, and in accordance with general principles of equity jurisprudence, complainant must have acted in good faith, must come into equity with clean hands, and do what is just and equitable to defendant. There are few cases in which courts of equity will insist on the maxim that he who seeks equity must do equity with more rigor than in suits for the specific performance of contracts. The facts and circumstances of each case must control the court in its determination of the question of complainant's good faith. Specific performance will be denied where plaintiff is guilty of acts amounting to fraud or false representations, or which are misleading."

Also, in 58 C. J. 1078, § 336, there is the following statement:

"Plaintiff's willful violation of an essential covenant, which was a material inducement to defendant to enter into the contract, is a defense to specific enforcement of the contract, unless the equities of the case require its enforcement."

Contracts involving traffic or routing clauses similar to the provisions of the contract in the instant case have been held valid and enforcible in the following cases: *Delaware, L. & W. R. Co. v. Kutter,* 147 Fed. 51; *Oregon R. & N. Co. v. Dumas,* 181 Fed. 781; *Northern Pac. R. Co. v. St. Paul & Tacoma Lbr. Co.,* 4 F. (2d) 359; *Bald Eagle Val. R. Co. v. Nittany Val. R. Co.,* 171 Pa. 284, 33 Atl. 239, 50 Am. St. 807, 29 L. R. A. 423; *Louisiana & A. R. Co. v. Winn Parish Lbr. Co.,* 131 La. 288, 59 So. 403.

Appellant has not offered to do equity in the instant case, and, therefore, is not entitled to the aid of a court of equity to decree specific performance.

The judgment is affirmed.

MALLERY, C. J., MILLARD, ROBINSON, and SIMPSON, JJ., concur.

---

October 8, 1947. Petition for rehearing denied.